185 N.J. Super. 97 (1982)
447 A.2d 583
LOTTIE S. BRUENN, INDIVIDUALLY AND AS ONE OF THE EXECUTORS UNDER THE WILL OF P. WANDA SWITLIK, DECEASED, PLAINTIFF-APPELLANT,
v.
STANLEY SWITLIK AND RICHARD SWITLIK, SR., INDIVIDUALLY AND AS TWO EXECUTORS UNDER THE WILL OF P. WANDA SWITLIK, DECEASED, AND IRENE K. SWITLIK, DEFENDANTS-APPELLANTS, AND GREAT ADVENTURE, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1981.
Decided June 14, 1982.
*98 Before Judges MICHELS, McELROY and J.H. COLEMAN.
Alfred C. Clapp argued the cause for appellants (Clapp & Eisenberg, attorneys; Alfred C. Clapp, of counsel and on the brief).
Frederic K. Becker argued the cause for respondent (Wilentz, Goldman & Spitzer, attorneys; Murray, Hollander, Sullivan & Bass and Daniel J. Sullivan of the New York Bar, and Frederic K. Becker, of counsel; Frederic K. Becker and Christine D. Petruzzell, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
*99 Plaintiff Lottie S. Bruenn and defendants Stanley Switlik and Richard Switlik, Sr., individually and as executors under the will of P. Wanda Switlik, deceased, and defendant Irene K. Switlik appeal from a judgment of the Chancery Division holding that the sole ownership of a certain note and mortgage, dated June 21, 1973, executed by Hardwicke's New Jersey Preserves, Inc., the predecessor of defendant Great Adventure, Inc. (Great Adventure), as mortgagor, in favor of Stanley Switlik and his late wife P. Wanda Switlik, as mortgagees, passed upon the latter's death to Stanley Switlik, as surviving joint tenant pursuant to the provisions of N.J.S.A. 46:2D-1. Other portions of the judgment under review determined that (1) Great Adventure would be permitted to retain all future payments of principal and interest on the note and mortgage as such payments become due and to apply them in partial satisfaction of a judgment which Great Adventure recovered against Stanley Switlik; (2) directed that the portion of the court-ordered escrow account representing payments made to the estate of P. Wanda Switlik on account of principal and interest under the note and mortgage be turned over to Great Adventure and applied in partial satisfaction of its judgment against Stanley Switlik, and (3) entered final judgment in favor of Great Adventure against the estate of P. Wanda Switlik in the sum of $319,692.92, including interest, which constituted a refund of Great Adventure's principal and interest payments to the estate, after P. Wanda Switlik's death, under the note and mortgage.
The pivotal issue posed on this appeal is whether the trial court erred in failing to reform the note and mortgage of June 21, 1973, which did not contain a specific designation as to the form of ownership of Stanley Switlik and P. Wanda Switlik, to reflect the Switliks' intent to own those instruments as tenants in common and not as joint tenants.
The relevant facts are not essentially in dispute. Stanley Switlik and P. Wanda Switlik were the owners of a large tract *100 of land in Jackson, New Jersey, known as the Lahaway Plantation. They owned this property as tenants by the entirety. P. Wanda Switlik had contributed approximately one-half of the purchase price of the land and the cost of improvements thereon, and after its acquisition made substantial contributions on account thereof. On June 21, 1973 Great Adventure purchased most of this property from Stanley Switlik and P. Wanda Switlik as a future site for an amusement park. As part of the purchase price Great Adventure gave Stanley Switlik and P. Wanda Switlik the note and mortgage dated June 21, 1973 in the original principal amount of $1,446,625, with interest at the rate of 6% a year. The note and mortgage provided for semi-annual payments of $72,331.25. Although the property had been owned by the Switliks as tenants by the entirety, neither the note nor the mortgage specified whether the Switliks owned these instruments as joint tenants or as tenants in common. However, the mortgage, in pertinent part, provided:
If Stanley Switlik and/or Wanda Switlik should die during the term of this mortgage, then on the due date of any estate, transfer or inheritance taxes which may become payable to the United States of America or any State or subdivision thereof by reason of the death of either of them, the Mortgagor shall be obligated to prepay with interest then due thereon, and there should automatically be accelerated for payment, the sum of Three Hundred Thousand ($300,000.00) Dollars (Six Hundred Thousand ($600,000.00) Dollars in all, in the event of the death of both); the said principal prepayment or prepayments to be credited against the principal installments which may next become due hereunder.
The note also contained a substantially identical provision.
The parties stipulated that from June 21, 1973, when the note and mortgage were executed, until October 25, 1975, when P. Wanda Switlik died, the semi-annual mortgage payments made by Great Adventure to Stanley Switlik and P. Wanda Switlik were "unevenly divided." Each payment was made by a single check payable to both of them, and the uncontroverted proofs show that Stanley Switlik and P. Wanda Switlik deposited their respective shares of the mortgage payments in separate bank accounts. It was further stipulated that after P. Wanda Switlik died the payments made by Great Adventure under the mortgage *101 "were divided evenly between the Estate of P. Wanda Switlik and Stanley Switlik." Again, the uncontroverted proofs show that these payments were also deposited in separate bank accounts.
On December 23, 1975, following the death of P. Wanda Switlik, Great Adventure tendered to Stanley Switlik a check in the sum of $304,150  the amount due in accordance with the provisions of the acceleration clauses contained in the note and mortgage. This check was refused and Great Adventure was informed that all future checks would be accepted only if made payable to both Stanley Switlik and the estate of P. Wanda Switlik. Sometime thereafter Richard Switlik, Sr., one of the executors of the estate of P. Wanda Switlik, notified Great Adventure that because estate taxes were due on his mother's estate, the payment due under the acceleration provisions was needed. On July 23, 1976 Great Adventure issued a check payable to both Stanley Switlik and the estate of P. Wanda Switlik in the sum of $319,143. The parties stipulated that this payment was also divided evenly between Stanley Switlik and the estate of P. Wanda Switlik. In 1976 the executors of the estate of P. Wanda Switlik filed New Jersey and federal estate tax returns, including as an asset of the estate one-half of the balance of $1,084,968.75 due on the Great Adventure mortgage.
In October 1977 Great Adventure recovered a judgment against Stanley Switlik in the sum of $4,912,043 and sought to execute thereon. Appeal was taken from that judgment and on December 30, 1977 we stayed execution pending appeal upon certain conditions. One of the conditions of the stay was that Stanley Switlik assign as additional security to Great Adventure his interest (excluding any possible interest of the heirs of P. Wanda Switlik, deceased) in the Great Adventure mortgage, and directed that the interest and principal payments made thereunder be placed in an escrow account. In accordance with that order, and a further order of this court dated April 6, 1978, an escrow account was established and Great Adventure made all subsequent payments of principal and interest due on the mortgage *102 into the escrow account. Thereafter, the judgment against Stanley Switlik was affirmed by this court, and on October 4, 1979 certification was denied by our Supreme Court. See Switlik v. Hardwicke Corp., 81 N.J. 354 (1979), cert. den., 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980).
On October 26, 1979 plaintiff instituted this action to reform the note and mortgage, joining as defendants Stanley Switlik and Richard Switlik, individually and as executors under the will of P. Wanda Switlik, and all other persons interested in the estate as well as Great Adventure. Great Adventure, the only defendant with an interest adverse to that of plaintiff, filed an answer, counterclaim and cross-claims seeking, among other relief, a declaration that the entire interest in the note and mortgage was acquired by Stanley Switlik as the surviving joint tenant, and that he held that interest to the exclusion of all persons taking under the will of P. Wanda Switlik, deceased. Great Adventure also sought a judgment directing that one-half of the escrow fund to which plaintiff and the other defendants asserted a claim be turned over to it without prejudice to its right to obtain possession of the other one-half of the fund. Following a nonjury trial, the trial judge held that Stanley Switlik and P. Wanda Switlik owned the Great Adventure note and mortgage as joint tenants pursuant to N.J.S.A. 46:2D-1 and that upon the death of P. Wanda Switlik, Stanley Switlik, as the surviving joint tenant, owned the note and mortgage in their entirety, to the exclusion of any interest of the estate of P. Wanda Switlik or any of the heirs claiming thereunder. The judge also held that Great Adventure could satisfy its judgment against Stanley Switlik from his sole interest in that note and mortgage. This appeal followed.
The Great Adventure note and mortgage do not specifically designate the form of ownership by which Stanley Switlik and P. Wanda Switlik held those instruments, thus implicating N.J.S.A. 46:2D-1, which provides:

*103 When any mortgage, covering real estate or chattels or both, shall hereafter be made and executed to, or assigned to, any husband and wife, such mortgage shall be held by such husband and wife as joint tenants and not as tenants in common, both as to the legal estate and the beneficial interest or debt thereby secured, unless otherwise therein provided.
Under this statute, when a mortgage is made and executed to a husband and wife, it is deemed to be held by them as joint tenants and not tenants in common. However, this statutory rule of construction does not create a conclusive presumption that the husband and wife intended to acquire the mortgage as joint tenants. Brodzinsky v. Pulek, 75 N.J. Super. 40, 47 (App. Div. 1962), certif. den., 38 N.J. 304 (1962). An action for reformation is still viable where the proofs show that the parties intended to acquire the mortgage as tenants in common. Id. See Kuller v. Fire Ass'n of Philadelphia, 124 N.J. Eq. 473, 475 (Ch. 1938). In Brodzinsky we held that although mortgages were executed to a husband and wife without any designation as to the form of ownership, nonetheless the proofs established that they intended to hold the mortgages as tenants in common and that N.J.S.A. 46:2D-1 did not bar reformation of the instruments to conform to their intention. In reaching this result, we pointed out:
... N.J.S.A. 46:2D-1 does not create a conclusively presumed intention, as was attempted in the case of N.J.S.A. 17:9A-216 dealing with trust accounts in banks, and is therefore not subject to the criticism pointed out in Howard Savings Institution v. Quatra, 38 N.J. Super. 174, 179 (Ch.Div. 1955).
"Equity looks to the substance, rather than the form." Under this familiar equitable maxim, the real intention of the parties is the dominant test for evaluating the legal effect of a particular instrument. Thus, a deed absolute on its face will be construed in equity as a mortgage, if the latter was what the parties intended. Papsco v. Novak, 94 N.J. Eq. 642, 644 (Ch. 1923); Antonucci v. Gravina, 134 N.J. Eq. 79, 81 (Ch. 1943). So, too, a conveyance to a husband and wife as tenants by the entirety has been judicially converted into a sole ownership in the wife to achieve an equitable result. Luebbers v. Luebbers, 97 N.J. Eq. 172 (Ch. 1925). Again, when "the written instrument fails to express the real agreement or transaction," either through a mistake common to both parties, or through the mistake of one party accompanied by the fraudulent knowledge and procurement of the other, there may be reformation. Downs v. Jersey Central Power & Light Co., 117 N.J. Eq. 138, 141 (E. & A. 1934). However, there must be clear and convincing proof "that the contract in its reformed, and not original, form is the one that the contracting parties understood *104 and meant it to be; and as, in fact, it was but for the alleged mistake in its drafting." Kuller v. Fire Ass'n of Philadelphia, 124 N.J. Eq. 473, 475 (Ch. 1938). [75 N.J. Super. at 47-48]
We concluded:
If Mr. and Mrs. Pulek intended a tenancy in common, it is clear that, in the process of reducing their understanding to written form, the scrivener by ignorance or mistake of law failed to express that intention because the form employed, under N.J.S.A. 46:2D-1, created a joint tenancy. We believe that the evidence compels the conclusion that Mr. and Mrs. Pulek intended to be co-owners of these mortgages without a right of survivorship, as they had been owners theretofore of the partnership business and shares in the corporation without a right of survivorship. Their mutual conduct subsequent to the receipt of these mortgages fortifies the conclusion that they intended from the outset to hold these mortgages as tenants in common and that the failure to express that intention was due to the scrivener's ignorance and misconception of the law, as well as the mutual mistake of the parties as to the legal consequences of the form in which the mortgages were cast. [Id. at 56]
Here, the acceleration provisions in the note and mortgage and the conduct of Stanley Switlik and P. Wanda Switlik subsequent to the execution of these instruments stand in stark contrast to the trial judge's conclusion that the Switliks owned the Great Adventure mortgage as joint tenants. Examination of the acceleration provisions in light of the state and federal estate tax laws in effect when the note and mortgage were drafted and the New Jersey law pertaining to the right of survivorship applicable to property held in joint tenancy, leads inexorably to the conclusion that the Switliks intended to hold this mortgage as tenants in common. In 1973, when the note and mortgage were executed, both the Internal Revenue Code and the New Jersey Transfer Inheritance Tax Act, as a general rule required the inclusion for tax purposes of a proportionate share of any property held jointly by a decedent at the time of his death in spite of the fact that such property passed outside of decedent's estate by virtue of the right of survivorship. See 26 U.S.C.A. § 2040; N.J.S.A. 54:34-1 f; Cross v. Transfer Inher. Tax Bur., 105 N.J. Super. 452 (App.Div. 1969).
The proofs established that P. Wanda Switlik contributed substantial sums of her own funds toward the acquisition and maintenance of the property which was eventually sold to Great *105 Adventure. Great Adventure executed the note and mortgage in favor of the Switliks to secure the unpaid balance of the purchase price of that property. Consequently, P. Wanda Switlik's interest in that mortgage was properly included in her taxable estate regardless of whether it was held by her during her lifetime as a joint tenant or as a tenant in common. Great Adventure's argument that this undercuts plaintiff's claim that the mortgage acceleration provision evinces an intent on the part of the Switliks to hold the mortgage as tenants in common, fails to properly consider the clear and express language of the provision and its obvious purpose, as well as the law of this State dealing with the right of survivorship between joint tenants.
The polestar of contract construction is to discover the intention of the parties as revealed by the language used by them. Kearny PBA Local # 21 v. Kearny, 81 N.J. 208, 221-222 (1979); Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301 (1953). To this end, the language used must be interpreted "`in accord with justice and common sense.'" Krosnowski v. Krosnowski, 22 N.J. 376, 386-387 (1956). As our Supreme Court noted in Tessmar v. Grosner, 23 N.J. 193 (1957):
In the quest for the common intention of the parties to a contract the court must consider the relations of the parties, the attendant circumstances, and the objects they were trying to attain. An agreement must be construed in the context of the circumstances under which it was entered into and it must be accorded a rational meaning in keeping with the express general purpose. Cameron v. International, etc., Union No. 384, 118 N.J. Eq. 11 (E. & A. 1935); Mantell v. International Plastic Harmonica Corp., 141 N.J. Eq. 379 (E. & A. 1947); Heuer v. Rubin, 1 N.J. 251 (1949); Casriel v. King, 2 N.J. 45 (1949); Owens v. Press Publishing Co., 20 N.J. 537, 543 (1956). [at 201]
See, also, Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 567 (1962); Insurance Co. of Penna. v. Palmieri, 81 N.J. Super. 170, 179 (App.Div. 1963), certif. den., 41 N.J. 389 (1964); Union Cty. U-Drive It v. Blomeley, 48 N.J. Super. 252, 256 (App.Div. 1958).
Viewed in light of the foregoing principles, we conclude that the trial judge erred in holding that the Switliks owned the mortgage as joint tenants with a right of survivorship.
*106 The acceleration provision reads that in the event either Stanley Switlik or P. Wanda Switlik died during the term of the mortgage, $300,000 of principal ($600,000 in the event both died), plus interest, would automatically be accelerated and become payable "on the due date of any estate, or transfer inheritance taxes which may become payable ... by reason of the death of either of them" (emphasis added). The purpose of this provision was to assure that either mortgagee's estate would have an adequate source of funds to pay the inheritance and estate taxes when they became due. To apply N.J.S.A. 46:2D-1 in these circumstances and thus create a joint tenancy by operation of law would frustrate the manifest intent of the parties and the object they sought to attain by this provision. It is firmly settled in this State that upon the death of a joint tenant his interest automatically passes outside of his estate to his cotenant by virtue of the latter's right of survivorship. See Gauger v. Gauger, 73 N.J. 538, 543-544 (1977). This is true even though the joint property is includable in the decedent's estate for inheritance and estate tax purposes. See Cross v. Inheritance Tax Bur., supra. Consequently, if Stanley Switlik and P. Wanda Switlik held the Great Adventure mortgage as joint tenants, Stanley Switlik would have become the sole owner of the mortgage upon P. Wanda Switlik's death, thus entitling him to all subsequent payments, including the acceleration payment to be made "on the due date of any estate, transfer or inheritance taxes", that P. Wanda Switlik's estate became obligated to pay. Obviously, this would make little sense because the estate of P. Wanda Switlik would not be advanced the funds necessary to pay the estate and inheritance taxes, which the parties had contracted to have available. Stanley Switlik, on the other hand, who would have no such inheritance or estate tax liability, would receive the $300,000 acceleration payment  a result patently unreasonable and contrary to the objective that the Switliks sought to attain by including the acceleration provision in the mortgage.
*107 Moreover, the evolution of the acceleration provision is further evidence that the Switliks did not intend to own the mortgage as joint tenants. One of the drafts of the contract of sale provided for a mortgage acceleration provision requiring a prepayment of principal in the amount of any federal and New Jersey inheritance taxes due "on account of" the Great Adventure mortgage in the event of only Stanley Switlik's death. However, on May 24, 1972, when the contract was executed in its final form, it provided for an acceleration provision which would be triggered by the death of either Stanley Switlik or P. Wanda Switlik. This provision read:
The mortgage shall be in the form of Exhibit D and also shall contain a covenant that during the term of the mortgage, if either Stanley Switlik or Wanda Switlik shall die, then within two years from the date of the death of such first to die, the Purchaser or its assigns will prepay the principal sum of the mortgage to the extent necessary to pay the federal estate transfer and New Jersey state inheritance taxes assessed against such estate to cover the taxes due on account of said mortgage.
The acceleration provision was further refined before it was included in the note and mortgage executed on June 21, 1973. Unquestionably the Switliks were concerned with having sufficient funds available to pay estate and inheritance taxes on their respective interests in the mortgage in the event that one of them died. This objective would not be realized if they owned the mortgage as joint tenants. Thus, applying N.J.S.A. 46:2D-1 in these circumstances to create a joint tenancy would frustrate the clear intention of the parties.
Moreover, the practical construction placed upon the mortgage by the Switliks is entitled to great weight in determining its construction (see Journeyman Barbers Local 687 v. Pollino, 22 N.J. 389, 395 (1956); Kingston Trap Rock Co. v. Eastern Engineering Co., 132 N.J.L. 254, 259-260 (E. & A. 1944); Macfadden v. Macfadden, 49 N.J. Super. 356, 360 (App.Div. 1958), certif. den., 27 N.J. 155 (1958); Washington Constr. Co. v. Spinella, 13 N.J. Super. 139, 142 (App.Div. 1951), aff'd, 8 N.J. 212 (1951); William Berland Realty Co. v. Hahne & Co., 26 N.J. Super. 477, 496 (Ch.Div. 1953), mod., 29 N.J. Super. 316 (App.Div. *108 1954)), and is persuasive evidence that they intended to hold the mortgage as tenants in common. As we pointed out above, after the execution of the note and mortgage and until the death of P. Wanda Switlik, the semi-annual principal and interest payments made by Great Adventure were made by checks payable to both of the Switliks, who, in turn, unevenly divided those proceeds and deposited them in separate bank accounts. After P. Wanda Switlik's death the mortgage payments made by Great Adventure were divided evenly between Stanley Switlik and the estate of P. Wanda Switlik and again deposited in separate bank accounts.
Consequently, we are thoroughly convinced that plaintiff established by clear and convincing evidence that Stanley Switlik and P. Wanda Switlik intended to acquire and own the Great Adventure mortgage as tenants in common without a right of survivorship, and that the failure to express their intent undoubtedly was due to a mistake in preparing the instruments. The trial judge's conclusion to the contrary was clearly mistaken and so plainly unwarranted that the interests of justice demand intervention and correction. We hold to "a definite conviction that the judge went so wide of the mark, a mistake must have been made." State v. Johnson, 42 N.J. 146, 162 (1964). "`[W]e are convinced that the [factual findings and legal conclusions of the court] are so manifestly unsupported by [and] inconsistent with the competent, relevant and reasonably credible evidence [that they] offend the interests of justice,' Fagliarone v. Twp. of No. Bergen, 78 N.J. Super. 154, 155 (App.Div. 1963)...." Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974).
Accordingly, we reverse the judgment of the Chancery Division holding that the sole ownership of the Great Adventure mortgage in favor of Stanley Switlik and P. Wanda Switlik passed upon the latter's death to Stanley Switlik as the surviving joint tenant, as well as the other portions of the judgment which are predicated upon that conclusion (including paragraphs 2, 2(a), 2(b) and 2(c)(i) and (ii)) and hereby enter judgment declaring that Stanley Switlik and P. Wanda Switlik owned the *109 Great Adventure mortgage as tenants in common without a right of survivorship. In light of this decision, we do not consider the other issues raised by appellants on this appeal.