249 N.J. Super. 487 (1991)
592 A.2d 647
KARL'S SALES AND SERVICE, INC. AND KARL'S APPLIANCE, INC., NEW JERSEY CORPORATIONS, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
GIMBEL BROTHERS, INC., DEFENDANT-APPELLANT AND CROSS-RESPONDENT, AND BATUS, INC. AND BATUS RETAIL INC., DEFENDANTS AND CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1991.
Decided July 16, 1991.
*489 Before Judges MICHELS, BRODY and D'ANNUNZIO.
Michael S. Waters argued the cause for appellant and cross-respondent Gimbel Bros., Inc. and cross-respondents Batus Inc. and Batus Retail Inc. (Carpenter, Bennett & Morrissey, attorneys; John P. Dwyer and Michael S. Waters, of counsel; Stephen F. Payerle, on the brief).
Laurence B. Orloff argued the cause for respondents and cross-appellants Karl's Sales and Service, Inc. and Karl's Appliance, Inc. (Orloff, Lowenbach, Stifelman & Siegel, attorneys; Laurence B. Orloff, of counsel; Laurence B. Orloff and Samuel Feldman, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Gimbel Brothers, Inc. (Gimbel) appeals from a final judgment of the Law Division entered following a bench trial that awarded plaintiff Karl's Sales and Service, Inc. damages in the amount of $850,000 based on a claim of breach of contract. Karl's Sales and Service, Inc. plaintiff and Karl's *490 Appliance, Inc. (which we shall hereinafter collectively refer to as "Karl's") cross-appeal from that part of the judgment that dismissed all other claims against Gimbel and all claims against defendants Batus, Inc. and Batus Retail Inc. based on the theories of violation of both the New Jersey Franchise Practice Act and the New Jersey Consumer Fraud Act, interference with both contractual relations and prospective economic advantage and equitable fraud.
The facts giving rise to this appeal are adequately recounted in the trial court's written opinion of October 18, 1989 and need not be fully repeated here. Briefly, by way of background, Karl's is a closely held family business that operated major appliance departments in six of Gimbel's department stores pursuant to six separate license agreements. The six Gimbel stores covered by the agreements were located in Paramus, New Jersey, on Lexington Avenue and on Broadway, in New York City and in Westchester, Garden City and Valley Stream, New York. In June of 1985, Karl's opened its appliance department in the Gimbel Paramus store and later that year opened in the remaining five Gimbel stores. In January 1986, BAT Industries, P.L.C. of Great Britain, the parent company of all defendants, (not a party in this action) publicly announced that Gimbel was for sale. After the announcement, BAT Industries, P.L.C. of Great Britain, attempted to market Gimbel as a going concern, but ultimately in June 1986, decided to close all Gimbel stores and sell the assets. On June 17, 1986, Gimbel sent Karl's a notification of cancellation of the license agreement with respect to each of the six stores. Gimbel relied on a clause that is contained in each licensing agreement for canceling these agreements. The clause relied upon was within paragraph 30 and provided for the termination of the license without liability to either party upon the closing of the store to which the license agreement pertains "if Gimbels shall discontinue or dispose of the business now conducted by it in the Store."
*491 On June 20, 1986, Karl's instituted this action by a complaint and order to show cause. After amended and supplemental complaints were filed, the matter was bifurcated for trial. At the conclusion of the trial on liability, the trial court held that although Gimbel made its decision to discontinue its entire business and to close each of its stores for legitimate business reasons and that there was nothing inherently unreasonable in Gimbel's desire, as clearly expressed in the licensing agreements, to close a store for any legitimate business reason without incurring liability to one or more of its licensees, the licensing agreements did not give Gimbel the right to go out of business entirely without liability to Karl's. The trial court thereupon held that Gimbel wrongfully terminated Karl's licenses under the six agreements. The trial court, however, dismissed all other claims asserted by Karl's against Gimbel and the two Batus defendants. Following the trial on damages, the trial court awarded to Karl's damages against Gimbel of $850,000 for anticipated loss of profits. This appeal and cross-appeal followed.

I.

Gimbel's Appeal
The thrust of Gimbel's challenge to the judgment is that the language contained in paragraph 30 of the licensing agreements is clear and unambiguous and permits Gimbel to both discontinue its business in one store while operating its remaining stores as well as to discontinue its business entirely without incurring any liability to Karl's. Gimbel contends, therefore, that the trial court erred in finding that paragraph 30 was ambiguous and that the agreement carried an implied covenant that Gimbel would fulfill its contractual obligation for the entire five year period. We agree and reverse.
Paragraph 30 of the licensing agreements provides:
30. Destruction of Space. In the event of a fire or any other casualty of any kind whatsoever which may result in the substantial destruction of any *492 Space then occupied by Licensee or if Gimbels shall discontinue or dispose of the business now conducted by it in the Store, the License shall terminate, and notwithstanding the provision of paragraph 33 hereof, neither party shall be liable to the other for any loss or damage resulting therefrom. If the Space shall be partially destroyed by fire or any other casualty without interrupting materially the regular business operations of Licensee in the Space, Gimbels shall, with reasonable dispatch, proceed with the repair of the Space, Licensee shall reinstall fixtures, furniture and equipment in the Space of the kind and character originally installed therein and this Agreement shall continue in full force and effect and, notwithstanding the provisions of Paragraph 33 hereof, neither party shall be liable to the other for any loss or damage resulting from said fire or other casualty. The parties agree that any insurance proceeds payable to Gimbels or Licensee shall be used for such repair. [Emphasis added].
The polestar of contract construction is to discover the intention of the parties as revealed by the language used by them. Jacobs v. Great Pacific Century Corp., 104 N.J. 580, 582, 518 A.2d 223 (1986); Kearny PBA Local # 21 v. Kearny, 81 N.J. 208, 221-22, 405 A.2d 393 (1979); Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301, 96 A.2d 652 (1953); Casriel v. King, 2 N.J. 45, 50, 65 A.2d 514 (1949). To this end, the language used must be interpreted "`in accord with justice and common sense.'" Krosnowski v. Krosnowski, 22 N.J. 376, 386-87, 126 A.2d 182 (1956) (citation omitted). As our Supreme Court noted in Tessmar v. Grosner, 23 N.J. 193, 201, 128 A.2d 467 (1957):
In the quest for the common intention of the parties to a contract the court must consider the relations of the parties, the attendant circumstances, and the objects they were trying to attain. An agreement must be construed in the context of the circumstances under which it was entered into and it must be accorded a rational meaning in keeping with the express general purpose. Cameron v. International, etc., Union No. 384, 118 N.J. Eq. 11 [176 A. 692] (E. & A. 1935); Mantell v. International Plastic Harmonica Corp., 141 N.J. Eq. 379 [55 A.2d 250] (E. & A. 1947); Heuer v. Rubin, 1 N.J. 251 [62 A.2d 812] (1949); Casriel v. King, 2 N.J. 45 [65 A.2d 514] (1949); Owens v. Press Publishing Co., 20 N.J. 537, 543 [120 A.2d 442] (1956).
See also Jacobs v. Great Pacific Century Corp., 104 N.J. at 582, 518 A.2d 223; Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 567, 178 A.2d 185 (1962); Anthony L. Petters Diner, Inc. v. Stellakis, 202 N.J. Super. 11, 28, 493 A.2d 1261 (App.Div. 1985); Bruenn v. Switlik, 185 N.J. Super. 97, 105, 447 A.2d 583 *493 (App.Div.), certif. denied, 91 N.J. 536, 453 A.2d 857 (1982); Insurance Co. of Penna. v. Palmieri, 81 N.J. Super. 170, 179, 195 A.2d 205 (App.Div. 1963), certif. denied, 41 N.J. 389, 197 A.2d 15 (1964); Union Cty. U-Drive It v. Blomeley, 48 N.J. Super. 252, 256, 137 A.2d 428 (App.Div. 1958).
Also, where an ambiguity appears in a written agreement, the writing is to be strictly construed against the party preparing it. See In re Miller's Estate, 90 N.J. 210, 221, 447 A.2d 549 (1982); Liqui-Box v. Estate of Elkman, 238 N.J. Super. 588, 599, 570 A.2d 472 (App.Div. 1990). This rule of construction is somewhat tempered by the principle that although "a contractual provision should generally be construed narrowly against its drafter [citation omitted], the construction should be sensible and in conformity with the expressed intent of the parties." Broadway Maintenance Corp. v. Rutgers, 90 N.J. 253, 271, 447 A.2d 906 (1982). In this regard,
Even where the intention is doubtful or obscure, the most fair and reasonable construction, imputing the least hardship on either of the contracting parties, should be adopted [citation omitted], so that neither will have an unfair or unreasonable advantage over the other. [Tessmar v. Grosner, 23 N.J. 193, 201, 128 A.2d 467 (1957)].
However, where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960); Levison v. Weintraub, 215 N.J. Super. 273, 276, 521 A.2d 909 (App.Div.), certif. denied, 107 N.J. 650, 527 A.2d 470 (1987). The court has no right "to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently." Id.; Brick Tp. Mun. Util. Auth. v. Diversified R.B. & T., 171 N.J. Super. 397, 402, 409 A.2d 806 (App.Div. 1979). Nor may the courts remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other. James v. Federal Ins. Co., 5 N.J. 21, 24, 73 A.2d 720 (1950).
*494 Viewed in light of these settled principles, the trial court erred in declaring that the licensing agreements were ambiguous and that Gimbel could not terminate its business entirely without incurring liability to Karl's. Paragraph 30 of the licensing agreements is clear and unambiguous; there is no room for interpretation or construction. The trial court should have enforced the pertinent language of paragraph 30 as written.
Under paragraph 30, Gimbel had an absolute right to discontinue or dispose of its business at each and every location covered by the licensing agreements regardless of the reason for such discontinuance or disposal and without any liability to the licensees. As the trial court correctly concluded, paragraph 30 of the licensing agreements "clearly" contained three separate provisions which allow Gimbel to terminate Karl's license: (1) substantial destruction of Karl's space as a result of fire or other casualty; (2) partial destruction by fire or other casualty; and (3) a decision by Gimbel to close the store. Nothing is inherently inequitable or unreasonable in Gimbel's decision, as clearly expressed in paragraph 30 of the licensing agreements, to close an entire store for any reason without incurring liability to one or more of its licensees. Moreover, nothing in paragraph 30 precludes Gimbel from ceasing to operate entirely and closing all its stores. The trial court's holding that Gimbel's right to cease business is limited to one particular store and that Gimbel could not go out of business entirely and close all stores is simply incorrect. Nothing in the agreements precludes Gimbel from doing this. Moreover, the clear and unambiguous language of paragraph 30, especially when each contract is viewed separately, does not make the closing of any one store dependent upon what occurs at any other Gimbel store or stores. Gimbel can close one store, any number of stores or all of its stores without having liability visited upon it.
Furthermore, the termination of Karl's licenses under these agreements is not dependent upon Gimbel's reasons for *495 closing any or all of its stores or entirely ceasing business. The trial court's decision implicitly finds an implied covenant that Gimbel would continue in business. However, no legal or factual basis exists to imply such a covenant here. The law is clear that where the right to terminate a contract is absolute under the wording in an agreement, the motive of a party in terminating such an agreement is irrelevant to the question of whether the termination is effective. Triangle Min. Co. v. Stauffer Chemical Co., 753 F.2d 734, 740 (9th Cir.1985); Blalock Machinery v. Iowa Mfg. Co., 576 F. Supp. 774, 777-78 (N.D.Ga. 1983); Augusta Medical Complex, Inc. v. Blue Cross of Kansas, Inc., 227 Kan. 469, 608 P.2d 890, 896 (1980) (citing to Zaidan v. Borg-Warner Corporation, 228 F. Supp. 669, 671 (E.D.Pa. 1964), aff'd, 341 F.2d 391 (3rd Cir.1965); Kraus v. General Motors Corporation, 120 F.2d 109 (2nd Cir.1941)). See Smith v. Price's Creameries, 98 N.M. 541, 650 P.2d 825, 830 (1982). Therefore, Gimbel could close any or all of its stores for any reason. Here, Gimbel closed the six stores covered by the licensing agreements and gave Karl's the notice required by the agreements. Gimbel cannot legally be held liable to Karl's for any claimed damages ensuing out of the license terminations.
Our result is consistent with and supported by the decision reached in the similar case of Megaris Furs, Inc. v. Gimbel Bros., Inc., ___ A.D.2d ___, 568 N.Y.S.2d 581 (App.Div. 1st Dept. 1991). In Megaris Furs, Inc., the New York Appellate Division upheld Gimbel's termination of two concessionaires' licenses following the closing of all stores. Id. 568 N.Y.S.2d at 583. The two concessionaires, who like Karl's, operated under licensing agreements which contained identical language as that in paragraph 30 here under review. In dismissing the concessionaires' actions, the court explained:
Plaintiffs operated concessions under license from defendant in its department stores  Megaris, a fur salon and the Edells, a health food department. These actions arise from the closing of Gimbel Brothers' ("Gimbels") department stores and termination of the agreements under which the respective plaintiffs operated. The gravamen of the dispute is the application of a clause *496 contained in a paragraph entitled "Destruction of Space" which provides: "In the event of a fire or any other casualty of any kind whatsoever which may result in the substantial destruction of any Space then occupied by Licensee or if Gimbels shall discontinue or dispose of the business now conducted by it in the Store, the license granted pursuant to this Agreement hereunder shall terminate * * * and * * * neither party shall be liable to the other for any loss or damage resulting therefrom." Plaintiffs argue that, simply because of the context, this clause should be applied only to discontinuance or disposal of Gimbels' business which results from fire or other casualty. However, the provisions respecting destruction of the space and discontinuance of the business are stated in the alternative, and no such limitation may be read into the contract language. Moreover, while the provision terminating any obligation under the contract upon cessation of business by Gimbels appears in an unexpected context, it would be highly surprising in view of the Court of Appeals' decision in 407 East 61st Garage v. Savoy Corporation, 23 N.Y.2d 275, 280, 296 N.Y.S.2d 338, 244 N.E.2d 37 if the contract failed to contain a provision expressly stating the obligor's intent to be bound only so long as viable commercial operations can be continued. [Id.]
A similar result was reached in Three D Departments Inc. v. K Mart Corp., 740 F. Supp. 528 (N.D.Ill. 1990). In Three D Departments, Inc., the concessionaire Three D argued that since the clause in the contract made reference to the termination of an "individual license for such store," the clause was entirely singular, and therefore, it was ambiguous concerning K Mart's ability to close all stores at the same time. Id. at 528-29. See Three D Departments, Inc. v. K Mart Corp., 732 F. Supp. 901, 905 (N.D.Ill.), modified, 740 F. Supp. 528 (N.D.Ill. 1990). The federal district court found to the contrary, holding that since the agreement granted a separate license for each store, the termination language too was singular. Therefore, the plain language of the license agreement was unambiguous and "K Mart could terminate as many individual licenses as it wanted, ..., as long as it was closing [a] store which contained [a] licensed department." Three D Departments, Inc. v. K Mart Corp., 740 F. Supp. at 529.
Consequently, we hold that the trial court erred in declaring that paragraph 30 of the licensing agreements was ambiguous and that Gimbel could not cease its operation entirely and close all its stores without incurring liability to Karl's under the licensing agreements. Therefore, the judgment entered in favor *497 of Karl's is reversed and judgment is hereby entered in favor of Gimbel, dismissing the count of the complaint based on breach of contract. Since we hold that Gimbel was not under any liability to Karl's for terminating the licensing agreements, we need not consider Gimbel's challenges to the amount and basis of the monetary award.

II.

Karl's Cross-Appeal
Turning now to the cross-appeal by Karl's against Gimbel, Batus, Inc. and Batus Retail Inc., we are satisfied from our study of the record and the arguments presented that the trial court properly entered judgment in favor of the defendants against plaintiffs dismissing all of the counts of the verified complaint and the amended and supplemental complaint. We are satisfied that all issues of law raised by Karl's are clearly without merit. R. 2:11-3(e)(1)(E). Therefore, we affirm that portion of the judgment challenged by Karl's on the cross-appeal substantially for the reasons expressed by Judge Coburn in his written opinion of October 18, 1989. See also Megaris Furs, Inc. v. Gimbel Bros., Inc., 568 N.Y.S.2d at 583-85.
Accordingly, the judgment of the Law Division entered in favor of Karl's Sales and Services, Inc. against Gimbel in the amount of $850,000 is reversed, and judgment entered in favor of Gimbel against Karl's dismissing the count of the complaint for breach of contract. In all other respects, the judgment under review is affirmed.