**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2894-18T4

GARY RIBE and
STEPHEN ESPOSITO,

     Plaintiffs-Appellants,

v.

MACRO CONSULTING
GROUP, LLC, MARK
CORTAZZO, individually, NICK
SPAGNOLETTI, JR., individually,
and HEIDI HEATH, individually,

     Defendants-Respondents.

_____

Argued February 11, 2020 – Decided March 9, 2020

Before Judges Hoffman and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2463-18.

Anthony M. Rainone argued the cause for appellants (Brach Eichler LLC, attorneys; Anthony M. Rainone, of counsel and on the briefs; Mark Edward Critchley, on the briefs).

Jed L. Marcus argued the cause for respondents (Bressler, Amery & Ross, PC, attorneys; David M. Levy (Kleinberg, Kaplan, Wolff & Cohen, PC) of the New York bar, admitted pro hac vice, Robert M. Tuchman (Kleinberg, Kaplan, Wolff & Cohen, PC) of the New York bar, admitted pro hac vice, and Kristin V. Hayes, on the brief).

PER CURIAM

Plaintiffs Gary Ribe and Stephen Esposito appeal from two Law Division orders entered on March 8, 2019 in favor of defendants MACRO Consulting Group (MACRO), Mark Cortazzo, Nick Spagnoletti, Jr., and Heidi Heath, granting defendants' motion to compel arbitration and stay the Law Division action filed by plaintiffs. We affirm.

I.

We discern the following facts from the motion record. In July 2011, Ribe, a Certified Financial Analyst (CFA) and a Certified Financial Planner (CFP), was hired by MACRO, a wealth management firm, as Director of Research. In 2014, he was promoted to the position of Chief Investment Officer.

Esposito was a CFP and a Senior Financial Advisor hired by MACRO in October 2009 as a client coordinator. In 2011, Esposito was promoted to the position of Financial Advisor, and in April 2018, he was promoted to Senior Financial Advisor.

A-2894-18T4

Cortazzo, Spagnoletti, and Heath are officers of MACRO. Cortazzo is MACRO's senior partner and principal. Spagnoletti is also a partner at MACRO, and serves as the Acting Chief Operating Officer. Heath is MACRO's Chief Compliance Officer.

At the beginning of their tenures with MACRO, both Ribe and Esposito executed documents entitled "Confidentiality and Restrictive Covenant Agreement" (agreements) that included lifetime restrictions on the employees from soliciting any clients or prospective clients, employees, or referral services from MACRO. In June 2016, MACRO presented new documents with the same title to plaintiffs, for the purpose of updating its confidentiality agreements. After an initial refusal to sign the contracts, Ribe and Esposito executed the new agreements in March 2017.

Both plaintiffs had months to review the agreements before signing them, and both were represented by counsel. Plaintiffs concede that the agreements were the product of negotiations between them and MACRO, and that the agreements were modified in response to their respective requests. They also acknowledged that the agreements were presented to them as a condition of their continued employment with MACRO.

 A-2894-18T4

The agreements governed various aspects of plaintiffs' relationships with MACRO, including ownership of intellectual property, confidentiality, a restriction on soliciting others to leave, and express limitations on the rights of Ribe and Esposito to solicit or service MACRO clients for a period of two years following their departures from MACRO. The contracts also contained the following arbitration clause:

> Except as otherwise provided by [s]ections [five] [Consequences of Breach] and [nine] [Forum Selection and Choice of Law], it is hereby expressly acknowledged, understood and agreed that any and all claims, disputes or controversies that may arise concerning this [a]greement, or the construction, performance, or breach of this [a]greement, or any other agreement between the parties, or concerning or relative to [Ribe's and Esposito's] employment with the [c]ompany, and whether based on contract, tort, statute or any other theory, will be submitted to and adjudicated, determined and resolved through compulsory, binding arbitration. The parties hereby irrevocably and unconditionally submit to the exclusive jurisdiction of the American Arbitration Association ("AAA"), unless another forum is required by law, for any action or proceeding arising out of or relating to this [a]greement, which will be governed in accordance with its Employment Arbitration Rules, unless otherwise mutually agreed by the parties. <u>It is acknowledged, understood and agreed that any such arbitration will be final and binding and that by agreeing to arbitration, the parties are waiving their respective rights to seek remedies in court, including the right to a jury trial. The parties waive, to the fullest extent permitted by law, any right they may have to a</u>

trial by jury in any legal proceeding directly or indirectly arising out of or relating to this [a]greement, whether based in contract, tort, statute (including any federal or state statute, law, ordinance or regulation), or any other legal theory. It is hereby expressly acknowledged, understood and agreed that: arbitration is final and binding; the parties are waiving their right to seek legal remedies in court including the right to a trial by jury; prearbitration discovery generally is more limited than and different from that available in court proceedings; the arbitrator's award is not required to include factual findings or legal reasoning; and any party's right to appeal or vacate, or seek modification of, the arbitration award, is strictly limited by law. It is understood, acknowledged and agreed that the prevailing party in any arbitration instituted under this section shall be entitled to recover from the non-prevailing party all costs of arbitration, including, without limitation, the arbitrator's fee and attorney's fees. The laws of the State of New Jersey will apply and the arbitration will be conducted in the State of New Jersey, County of Morris.

[(Emphasis added).]

The first of the two other sections referenced in the arbitration clause, section five, contains an express acknowledgment by the employee that his breach "will result in irreparable harm to the [c]ompany," and affords MACRO the exclusive right to seek "equitable relief" in court, including a preliminary or permanent injunction, "in the event that [Ribe or Esposito] violate any of the [agreements'] covenants or restrictions." Section five provides:

[Ribe and Esposito] further acknowledge and understand that [their] violation of any of the above [confidentiality, non-solicitation and non-compete] covenants or restrictions will result in irreparable harm to the [c]ompany, and that an award of money damages, alone, will not be adequate to remedy such harm. Consequently, in the event that [they] violate any of the above covenants or restrictions, the [c]ompany, in addition to any other rights and remedies provided under law, will be entitled to both legal relief and equitable relief, including specific performance. This will include but not be limited to: (a) a preliminary or permanent injunction in order to prevent the continuation of such harm; and (b) money damages, insofar as they can be reasonably determined, including, without limitation, all reasonable costs and attorneys' fees incurred by the [c]ompany in filing a lawsuit to enforce the provisions of this [a]greement. [Ribe and Esposito] further acknowledge, understand and agree that actual or threatened misappropriation, solicitation or competition may be enjoined to prevent any commercial advantage that may be derived or obtained by or from [their] misappropriation of any [c]onfidential [i]nformation or improper solicitation or competition in violation of the terms of this [a]greement.

The second section mentioned in the arbitration clause, section nine, specified the forum for bringing suit:

Any dispute in the meaning, understanding, effect, interpretation or validity of this [a]greement will be resolved in accordance only with the laws of the State of New Jersey. In the event any action for equitable relief, injunctive relief or specific performance is filed, or should any action be filed to confirm, modify or

6                                                                                          A-2894-18T4

vacate any award rendered through compulsory binding arbitration, [Ribe and Esposito] hereby irrevocably agree that the forum for any such suit will be in an appropriate state or federal court in the County of Morris, State of New Jersey, and [Ribe and Esposito] hereby agree to the personal jurisdiction and venue of such court.

Ribe originally attempted to negotiate the removal of the arbitration agreement in August 2016 before signing the new contract, but was unsuccessful. Although MACRO allowed the parties to negotiate some of the terms of the agreements, it stood firm on the arbitration clause, and both Ribe and Esposito signed the agreements with the arbitration clause fully intact. The agreements were hand signed, on hard copy paper, by both plaintiffs.

After working at MACRO for a number of years, Ribe and Esposito left MACRO in December 2018 in order to open Accretive Wealth Partners (AWP), a competing wealth management firm they formed while still employed by MACRO.

In their brief, plaintiffs assert they left MACRO because of its purported misconduct, and they pointed to MACRO being investigated by the Securities Exchange Commission (SEC). The record shows MACRO was absolved from any wrongdoing by the SEC. Following the SEC investigation, Ribe inquired

A-2894-18T4

about becoming an equity partner at MACRO.  After failing to negotiate long-term, equity-based contracts at MACRO, plaintiffs formed AWP.

As of November 2018, Ribe was designated as a managing member and partner, Chief Investment Officer, and Chief Compliance Officer of AWP, and Esposito was a managing member and partner as of December 2018.  On December 17, 2018, plaintiffs resigned from MACRO and advised Cortazzo and Spagnoletti of their intent to compete with MACRO.  Plaintiffs contend they did not tell any MACRO clients about their new firm until after they resigned.

While still employed by MACRO, plaintiffs filed their complaint on December 14, 2018, unbeknownst to defendants, alleging regulatory and compliance based claims, and a count alleging violations of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1, even though plaintiffs did not assert they engaged in any CEPA protected act or that they faced retaliation.  Plaintiffs did not allege that the agreements were unconscionable.

Without knowledge of plaintiffs' complaint, on December 18, 2018, MACRO filed a demand for arbitration with the AAA, seeking monetary damages arising from the breach of contract, including plaintiffs' solicitation of over 100 MACRO clients, as well as their threatened misappropriation of MACRO's confidential and proprietary information.

A-2894-18T4

Plaintiffs filed an order to show cause (OTSC) in the Law Division seeking to temporarily restrain the AAA Arbitration pending the return date of the OTSC. On January 4, 2019, the trial court granted plaintiff's' OTSC with temporary restraints. Defendants opposed the OTSC and cross-moved to dissolve the temporary restraints, dismiss the complaint, and compel arbitration. On February 21, 2019, the trial court heard oral argument and issued a written opinion on March 8, 2019.

In denying plaintiffs' OTSC, compelling arbitration and staying the complaint, the trial court found:

> Reading the [a]greements as a whole, it is clear that in the event that there is a violation of any covenants or restrictions, [MACRO] is entitled to both legal and equitable relief. In conjunction with [s]ection [five], [s]ection [nine] goes on to provide that such actions will be brought in state or federal court. On the other hand, the [a]rbitration [c]lause unequivocally provides that [p]laintiffs agreed to arbitrate all claims or disputes that arose from the [a]greements or from a breach of the [a]greements. Section [five] does not provide that all actions for equitable relief must be brought in state or federal court but rather only those actions in which an employee has violated a covenant or restriction within the [a]greements. As such, a reading of the [a]greements establish[es] that an action in which employees of MACRO seek to render the covenants unenforceable should be brought in arbitration even though an employee may be seeking equitable relief.

9

Plaintiffs in their reply contend that to the extent that there may be two readings of the [a]greements, the court must interpret the agreements against the drafter. This argument, however, ignores the fact that [p]laintiffs received the [a]greements months before executing them and had the opportunity to review the [a]greements with their own legal counsel before signing. In fact, Ribe . . . tried to negotiate the elimination of the [a]rbitration [c]lause before signing the [a]greement with the [a]rbitration [c]lause fully intact. Moreover, this argument has no merit because the plain words of the [a]greements are clear and unambiguous even though the court has concluded that [d]efendants' interpretation of the [a]greements is the proper interpretation, not [p]laintiffs'

Plaintiffs in their reply also contend that [d]efendants' claimed unilateral right to dictate arbitration or not has no support in the plain language of the [a]greements. . . . [However,] a careful reading of the provision at issue (the [a]rbitration [c]lause, [s]ection [five] and [s]ection [nine] reveals that such an exclusive right does exist. Specifically, pursuant to [s]ection [five], the company may seek legal and equitable relief in the event that an employee violates a covenant of the agreement. In conjunction with [s]ection [nine], a claim for equitable relief may be brought in state court. However, pursuant to the [a]rbitration [c]lause, <u>all</u> claims that an employee may have against MACRO must be pursued in arbitration. Contrary to [p]laintiffs' position, the [a]greements are clear as to this exclusive right that is held by MACRO.

Thereafter, plaintiffs filed a notice of appeal and a motion to stay the arbitration.

On March 29, 2019, the subsequent trial court heard oral argument on plaintiffs' motion and granted the stay. A memorializing order was entered that day.

II.

On appeal, plaintiffs argue that:

(1)   the trial court erred in staying plaintiffs' lawsuit and compelling arbitration by failing to give the terms of the 2017 restrictive covenants their plain and ordinary meaning;

(2)   alternatively, the waiver of plaintiffs' right to litigate in a judicial forum was not clear and unambiguous;

(3)   alternatively, the 2017 restrictive covenants are unenforceable for lack of consideration; and

(4)  if this court finds plaintiffs had no right to file their complaint, then the 2017 restrictive covenants should be deemed unenforceable for being unconscionable.

We deem these arguments to be without merit.

We begin by reciting our standard of review.  The validity of an arbitration agreement is a question of law; therefore, our review of an order denying a motion to compel arbitration is de novo.  Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019) (citing Hirsch v. Amper Fin. Servs., LLC., 215 N.J. 174, 186 (2013)); see Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014) ("Our review of a contract, generally, is de novo, and therefore we owe no special deference to the trial court's . . . interpretation.  Our approach in

11

construing an arbitration provision of a contract is governed by the same de novo standard of review." (citations omitted)).

In reviewing such orders, we are cognizant of the strong preference to enforce arbitration agreements, both at the state and federal level. See Hojnowski v. Vans Skate Park, 187 N.J. 323, 341-42 (2006) (noting federal and state preference for enforcing arbitration agreements); Garfinkle v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 131 (2001) (recognizing "arbitration as a favored method for resolving disputes").

"A party who enters into a contract in writing, without any fraud or imposition being practiced upon him [or her], is conclusively presumed to understand and assent to its terms and legal effect." Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992) (quoting Fivey v. PA R.R., 67 N.J.L. 627, 632 (1902)). Arbitration agreements are afforded the same contract defenses of fraud, duress and unconscionability. Delta Funding Corp. v. Harris, 189 N.J. 28, 39 (2006) (citations omitted).

When interpreting a contract, our task is to discern the intent of the parties. J.L. Davis & Assocs. v. Heidler, 263 N.J. Super. 264, 270 (App. Div. 1993) (citing Karl's Sales & Serv. v. Gimbel Bros., 249 N.J. Super. 487, 494 (App. Div. 1991)). Contracts that are clear and unambiguous must be enforced as

written.  Id. at 271 (citing Karl's Sales, 249 N.J. Super. at 493).  However, "where the intention is doubtful or obscure, the most fair and reasonable construction, imputing the least hardship on either of the contracting parties, should be adopted, so that neither will have an unfair or unreasonable advantage over the other."  Ibid. (quoting Karl's Sales, 249 N.J. Super. at 493).

We also recognize the Federal and New Jersey Arbitration Acts express a general policy favoring arbitration.  Atalese, 219 N.J. at 440; see also 9 U.S.C. §§ 1 to 16; N.J.S.A. 2A:23B-1 to -32.  "The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court."  Badiali v. N.J. Mfrs. Ins., 220 N.J. 544, 556 (2015) (citing Cty. Coll. of Morris Staff v. Cty. Coll. of Morris Staff Ass'n, 100 N.J. 383, 390 (1985)).

Plaintiffs here argue that the agreements entitle them to pursue their claims in court.  Their argument focuses on one sentence in section nine of the agreements, which they interpret as allowing them or MACRO to file a complaint seeking injunctive relief:  "In the event any action for equitable relief, injunctive relief or specific performance is filed . . . suit will be in an appropriate state or federal court in the County of Morris . . . ."

However, section five of the agreements sets forth an exception to section eight's arbitration requirement because it unequivocally states the employee's

breach will cause irreparable harm to MACRO, thereby permitting only MACRO to pursue claims for equitable relief, such as an injunction, in court, in order to mitigate any potential consequences of a breach. When read in conjunction with section eight, section five vests an exclusive but limited litigation right to MACRO only:

> [Ribe and Esposito] further acknowledge and understand that [their] violation of any of the [confidentiality, non-solicitation and non-compete] covenants or restrictions will result in irreparable harm to the [c]ompany, and that an award of money damages, alone, will not be adequate to remedy such harm. Consequently, in the event that [Ribe and Esposito] violate any of the above covenants or restrictions, the [c]ompany, in addition to any other rights and remedies provided under law, will be entitled to both legal relief and equitable relief, including specific performance . . . in filing a lawsuit to enforce the provisions of this Agreement.

Contrary to plaintiffs' argument, sections five and eight of the agreements only permit MACRO to file a lawsuit for equitable relief. We conclude that section nine does not confer a right upon MACRO's employees to file a lawsuit seeking equitable relief. Plaintiffs' argument is unconvincing because they explicitly agreed to this provision in the agreements. As our Supreme Court noted in Atalese, arbitration agreements are in an "equal footing with other

A-2894-18T4

contracts" and courts should "enforce them according to their terms."  Atalese,

219 N.J. at 441 (citation omitted).

Far more persuasive are the four separate express waiver clauses

contained in each of the agreements:

> (1) It is acknowledged, understood and agreed that any such arbitration will be final and binding and that by agreeing to arbitration, the parties are waiving their respective rights to seek remedies in court, including the right to a jury trial.
>
> (2) The parties waive, to the fullest extent permitted by law, any right they may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this [a]greement, whether based in contract, tort, statute . . . , or any other legal theory.
>
> (3) It is hereby expressly acknowledged, understood and agreed that:  arbitration is final and binding; the parties are waiving their right to seek legal remedies in court including the right to a trial by jury; pre-arbitration discovery generally is more limited than and different from that available in court proceedings; the arbitrator's award is not required to include factual findings or legal reasoning; and any party's right to appeal or vacate, or seek modification of, the arbitration award, is strictly limited by law.
>
> (4) I UNDERSTAND THAT I HEREBY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT I MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING WHICH MY [sic] ARISE, DIRECTLY OR INDIRECTLY, FROM OR RELATING TO THIS AGREEMENT.

The four waiver clauses were conspicuously inserted in various sections of the agreements and unequivocally state that a jury trial is waived. Moreover, it was crystal clear that the parties would arbitrate with the AAA.

In support of their argument, plaintiffs only cite to one case, Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super. 252 (App. Div. 2000). The arbitration clause in Quigley merely stated:

> Any claim or controversy between the parties arising out of or relating to this Agreement or the breach thereof, or in any way related to the terms and conditions of the employment of Manager by [defendant], shall be settled by arbitration under the laws of the state in which Manager's office is located.
>
> [Id. at 257 (alteration in original).]

We are not persuaded by plaintiffs' argument because the agreements here are not deficient under the Court's mandate in Atalese.

As stated, there are multiple references in the agreements stating that plaintiffs waived their right to a jury trial and agreed to arbitrate their claims. Moreover, the waivers constituted sufficiently clear and unambiguous language advising plaintiffs they could not seek a jury trial thereby rendering the agreements enforceable.

We are satisfied the multiple references stating a party could not maintain a "court action" constituted sufficiently clear and unambiguous language

16

advising plaintiffs they could not seek a jury trial. See Griffin v. Burlington Volkswagen, Inc., 411 N.J. Super. 515, 518 (App. Div. 2010) (upholding an arbitration clause stating the parties, by agreeing to arbitration, "waiv[ed] their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes"). Thus, the trial court correctly compelled arbitration in this matter.

## III.

Plaintiffs attempted to persuade the AAA to dismiss MACRO's arbitration demand based on the first-filed rule without success. We have explained the first-filed rule to:

> [G]enerally require[] that a court with jurisdiction over a matter should defer to the court that first acquired jurisdiction over the dispute. As explained by our Supreme Court, [i]f we are to have harmonious relations with our sister states, absent extenuating circumstances sufficient to qualify as special equities, comity and common sense counsel that a New Jersey court should not interfere with a similar, earlier-filed case in another jurisdiction that is capable of affording adequate relief and doing complete justice.
>
> [CTC Demolition Co. v. GHM AETC Mgmt./Dev. LLC, 424 N.J. Super. 1, 6 (App. Div. 2012) (second alteration in original) (citations and quotations omitted).]

Our Court has recognized the inapplicability of the first-filed rule in the context of an arbitration demanded after a declaratory judgment has been filed. In Sensient Colors Inc. v. Allstate Ins., 193 N.J. 373 (2008), the Court cited a case with a similar procedural history as the matter under review:

> [T]he [plaintiff], less than a day after refusing to arbitrate, raced to file a declaratory judgment action in a North Carolina state court. Shortly afterwards, the [defendant] filed an action in federal court to enforce the arbitration agreement. The Supreme Court held that the first-filed rule did not apply, in part, because the [plaintiff] deprived the [defendant] of a "reasonable opportunity" to file suit in the jurisdiction of its choice.
>
> [Id. at 388 (citing Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 4-7, 21 (1983)).]

Plaintiffs' argument is entirely without merit. Simply because plaintiffs filed their complaint two days prior to MACRO's demand for arbitration provides no basis to circumvent the intent of the agreements.

In their brief, plaintiffs also contend that the agreements were not supported by adequate consideration. However, plaintiffs concede that:

> Cortazzo claimed execution of the document was a condition of Ribe's continued employment at MACRO
> . . . .
>
>     . . . .
>
> As of March 2017 (over nine months after it was initially presented), MARCO [sic] was still harassing

> Ribe to execute the document. As a result of the harassment, . . . with certain modifications by way of addendum, Ribe executed [the agreement] . . . .
>
> . . . .
>
> Cortazzo summoned Esposito to Cortazzo's office, with Spagnoletti in attendance. At that meeting, Cortazzo threatened Esposito that he would not be allowed back in the office if he did not sign the new document.

Plaintiffs' execution of the agreements was a condition of their continued employment, and our Court has held that agreements executed under these circumstances are supported by adequate consideration. See Martindale v. Sandvik, Inc., 173 N.J. 76, 88-89 (2002); see also Roman v. Bergen Logistics, LLC, 456 N.J. Super. 157, 163 (App. Div. 2018). Applying these well-settled standards of review, we conclude there was adequate consideration to support the agreements containing the arbitration clauses here.

On appeal, plaintiffs also argue that the agreements are unconscionable. We decline to address this argument as it was not squarely raised before the trial court. We "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins., 62 N.J. 229, 234 (1973)).

After careful review of the record and legal principles, we conclude that plaintiffs' further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed. The trial court's stay of arbitration is dissolved.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2894-18T4