**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3854-18T2

CAPITAL ENERGY, INC.,

    Plaintiff-Appellant,

v.

MOHANNAD K. TAHA, d/b/a
TAHA ENTERPRISES, INC.,

    Defendant-Respondent.

_____

Argued December 12, 2019 – Decided September 14, 2020

Before Judges Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000076-17.

Eugene R. Licker (Ballard Spahr, LLP) of the New York bar, admitted pro hac vice, argued the cause for appellant (Ballard Spahr, LLP, attorneys; Eugene R. Licker and Christopher J. Kelly, on the briefs).

James T. McCarthy argued the cause for respondent (McCarthy, Galfy & Marx, LLC, attorneys; James T. McCarthy, on the brief).

PER CURIAM

Plaintiff Capital Energy, Inc. appeals the March 29, 2019 decision that denied its motion to enforce a September 7, 2017 order, prohibiting defendant Mohannad K. Taha (d/b/a Taha Enterprises, Inc.) from soliciting business from a list plaintiff provided to defendant. We affirm the order denying enforcement.

I.

We glean these facts from the plenary hearing and record. Defendant is a former sales representative for plaintiff, a firm that brokers energy service agreements between end-user customers and electricity and natural gas suppliers. He was retained as an independent contractor. Plaintiff alleges that in 2014, defendant signed a Non-disclosure and Non-solicitation Agreement (the Agreement) with plaintiff. Under the Agreement, defendant agreed for a period of twenty-four months after termination of his engagement with plaintiff not to "directly or indirectly solicit, divert, initiate or accept any contact with any client or customer of [plaintiff] for the purpose of providing, directly or indirectly, any services that are provided by [plaintiff] pursuant to [plaintiff's] business."

In 2015—as a sales representative for plaintiff—defendant brokered an energy contract between NextEra Energy Services and MWV Slatersville, LLC (MWV Slatersville) for its Slatersville facility. The contract was for twenty-

four months, extending to November 2017. Plaintiff claimed MWV Slatersville was its largest customer.

In September 2015, MWV Slatersville merged with WestRock Company and changed its name to WestRock Slatersville, LLC (WestRock Slatersville). In January 2017—before the energy contract ended—WestRock's home, health and beauty marketing companies, which included WestRock Slatersville, were purchased by Silgan Holdings, Inc. Thereafter, in May 2017, WestRock Slatersville amended its articles of incorporation, on file with the Rhode Island Secretary of State, to reflect its name as Silgan Dispensing Systems Slatersville, LLC (Silgan Slatersville).

Defendant's business relationship with plaintiff ended on July 5, 2016. Plaintiff alleged defendant started a competing business, Northeast Energy Advisory, using plaintiff's proprietary client information.

In March 2017, plaintiff filed a verified complaint against defendant in the Chancery Division, alleging he violated the Agreement. Plaintiff sought a declaratory judgment enforcing the Agreement, enjoining defendant from using its confidential information and client lists. Plaintiff also alleged breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference with its business relationship. Finally, plaintiff demanded an accounting of profits, and damages. Ibid.

Counsel representing the parties appeared to reach a settlement in principle. However, defendant's attorney withdrew from representation in mid-June 2017, and after that defendant—who then was pro se—advised plaintiff's counsel he would not sign the settlement agreement.

Plaintiff filed a motion to enforce the settlement it claimed had been reached. On September 7, 2017, the trial court granted plaintiff's motion, finding the parties reached a settlement on June 2, 2017, because they agreed on three key provisions: "(1) [d]efendant would not solicit plaintiff's customers, who were to be identified according to [p]laintiff's list; (2) [p]laintiff would not disparage [d]efendant; and (3) the parties would mutually release one another from further claims." The trial court found defendant "ratified the material terms by his later conduct" because on June 29, 2017, he revised a draft of the Agreement with his comments but "left [ ] intact" the three core concepts. The September 7, 2017 order provided:

> [u]pon the date of entry of this ORDER and continuing for THREE HUNDRED AND SIXTY-FIVE DAYS (365) thereafter, neither Taha nor any individual or entity acting at his direction or on his behalf will solicit, contact, or engage in business transactions of any kind with the individuals, entities, and/or businesses listed in the customer list provided by Plaintiff to Defendant in connection with this litigation. In addition, Taha shall keep the contents of this customer list confidential, and shall not share its contents or describe its contents to anyone. Violation of this provision by

4 A-3854-18T2

Taha would cause Capital Energy irreparable harm, for which he and his enterprises will be jointly and severally liable.

"MWV Slatersville, LLC" was on the list of companies provided by plaintiff to defendant; Silgan Slatersville was not. The list was prepared by plaintiff's Chief Executive Officer Caleb Berger, who testified the list was to include every business to which defendant was introduced while working for plaintiff to create broad protection for the company. Reference to "individuals, entities and/or businesses" was to "prevent [defendant] from benefiting from calling any of the clients, lists or information that he had taken from [the] firm."

Raymond Frenette, a Silgan manufacturing technology and systems manager, said that defendant reached out to him prior to November 2017, "to see if I wanted to engage his new firm to broker an energy contract for Silgan, since the existing, Capital-brokered contract was expiring and he was the broker on the original contract." Defendant denied this indicating Frenette contacted him. Frenette designated defendant's company as the "exclusive intermediary to manage, represent and assess all related electricity matters on behalf of Silgan Holdings[,] Inc." Defendant brokered a contract between Silgan Slatersville and Agera Energy. Silgan Slatersville was issued a new and separate tax identification number separate from WestRock Slatersville.

In February 2018, plaintiff filed a motion in aid of litigant's rights, alleging that defendant violated the September 7, 2017 order by brokering a contract with Silgan Slatersville. Although not included in the list of companies, the motion alleged Silgan Slatersville was the same business as MWV Slatersville, which was on the list. Claiming defendant was in contempt of the September 7, 2017 order, plaintiff sought to enjoin further violation and to impose a constructive trust on all of defendant's associated brokerage commissions. The court conducted a plenary hearing, describing the "sole issue" as "whether the defendant's relationship with Silgan violated the settlement agreement as described in the order of . . . September 7th, 2017."

On March 29, 2019, the trial court denied plaintiff's motion finding there was "no dispute that the customer list attached to the September 7 order does not include Silgan's name," and "the [o]rder, which was prepared by Capital's counsel, did not include a provision which provided that it applied to successors and/or assigns of the persons, entities or businesses identified on the customer list." The trial court found that "[u]pon the purchase of WestRock's business by Silgan . . . , MWV's account numbers for electric service at the Rhode Island facility were terminated and new account numbers were issued to Silgan." Further, "new tax [identification] numbers for Silgan were associated with the new accounts." Although "[t]here [was] conflicting testimony" as to whether

Taha contacted Frenette first or the other way around, the court found Taha contacted Frenette "[four to five] months before the Nextera [c]ontract was due to expire in November 2017."  The court observed it was not clear "whether [defendant] was aware of the transactions between MWV and WestRock and then WestRock and Silgan," but noted defendant's testimony was "rambling and less than credible."  Nonetheless, the court found there was "no dispute that the customer list attached to the September 7 Order does not include Silgan's name, even after Silgan acquired WestRock."  The court explained that "simply because Silgan may have conducted the same type of business (packaging and plastics manufacturing) as did MWV does not mean that Silgan is covered by the non-solicitation provisions of the September 7 Order."  And, without a clause including "successors and/or assigns," the court could not supply one because "[t]o do so would, in effect, allow the court to write a better agreement for Capital than it did for itself.  Such an action by the court would be improper."

On appeal, plaintiff raises these issues:

> I. THE TRIAL COURT ABUSED ITS DISCRETION IN RULING THAT DEFENDANT WAS NOT IN CONTEMPT OF THE SEPTEMBER 7, 2017 ORDER.
>
> II. THE COURT ERRED IN RULING THAT THE ABSENCE OF "SUCCESSORS AND ASSIGNS" LANGUAGE WAS FATAL TO PLAINTIFF'S MOTION[.]

## II.

We afford a deferential standard of review to the factual findings of the trial court on appeal from a plenary hearing. Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 483-84 (1974). These findings will not be disturbed unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Id. at 484 (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, our review of a trial court's legal determinations is plenary. D'Agostino v. Maldonado, 216 N.J. 168, 182-83 (2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

There was substantial, credible evidence to support the court's findings and to deny plaintiff's motion to enforce the September 7, 2017 order. Generally, contract terms are to be given their "plain and ordinary meaning." M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002). "If the terms of a contract are clear, they are to be enforced as written." Malick v. Seaview Lincoln Mercury, 398 N.J. Super. 182, 187 (App. Div. 2008) (citing Cty. of Morris v. Fauver, 153 N.J. 80, 103 (1998)).

There was no dispute that Silgan Slatersville was not included in the list of companies in the September 7, 2017 order. Defendant was not restrained from brokering for a company that was not listed in the order. Thus, under a plain reading of the September 7, 2017 order, defendant was not restrained from brokering the contract with Silgan Slatersville.

Plaintiff contends Silgan Slatersville is the same legal entity as MWV Slatersville and that only the entity's name changed. However, there was evidence that when Silgan purchased WestRock's home, health and beauty business (formerly MWV) and became Silgan Slatersville, MWV's account numbers for electric service at the Rhode Island facility were terminated and new account numbers were issued to Silgan. New tax identification numbers for Silgan Slatersville were associated with the new accounts. Frenette's testimony was that when MWV merged with WestRock, the business was not issued new account numbers by National Grid, but was provided a new account once Silgan Holdings purchased WestRock. Silgan Holdings altered the company's internal structure, changing it from "member managed" to "manager managed." Two individuals from Silgan Holdings were identified as the managers. Therefore, although Silgan Slatersville continued to produce the same types of products, there was a change in governance and "operational differences."

The trial court found significant that the list of companies did not include a successor and assigns clause although plaintiff included that language in its form of order submitted to the trial court that became the September 7, 2017 order. That order contained the following language: "[t]he [p]arties, on their behalf and on behalf of their successors, officers, heirs, partners, shareholders, employees, legal representatives, agents, assigns, and any person or entity acting actually or apparently on their behalf . . . hereby release and forever discharge each other . . . ." We agree this language is an additional factor the court could consider in concluding whether the companies listed in the September 7, 2017 order were also to include their successors and assigns. See Evoqua Water Techs., LLC v. M.W. Watermark, LLC, 940 F. 3d 222, 246 (6th Cir. 2019) (Bush, J., concurring) (explaining that "the absence of [a] successors-in-interest or assigns clause 'is the functional equivalent of the parties' express intent to exclude language of assignment' and '[e]qually as telling is that the consent judgment specifies successors and assigns when listing' the defendant's obligations" (quoting Thatcher v. Kohl's Dep't Stores, Inc., 397 F. 3d 1370, 1375 (Fed. Cir. 2005) (alteration in original))). A similar factual situation existed here. A portion of the order expressly referenced successors and assigns, but there was no such reference in the list of companies.

As a general rule, a court has no right to "remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other." Karl's Sales & Serv., Inc. v. Gimbel Bros., Inc., 249 N.J. Super. 487, 493 (App. Div. 1991); see Globe Motor Co. v. Igdalev, 436 N.J. Super. 594, 602 (App. Div. 2014) (holding "the court may not re-write a contract or grant a better deal than that for which the parties expressly bargained"), rev'd on other grounds, 225 N.J. 469 (2016). Plaintiff was aware of Silgan Holdings' acquisition of WestRock prior to the September 7, 2017 order but did not incorporate the name into the list provided to defendant. There is no indication contemporaneous with the September 7, 2017 order that Silgan Slatersville was supposed to be included.

Plaintiff argues that Silgan Slatersville is the same legal entity because the Rhode Island Secretary of State used the same number for the entity despite its merger or sale. It contends the business is in the same location, has the same employees, the same phone numbers and does the same business. It cites no authority, however, to support the argument that Rhode Island's system of record keeping should be determinative here. The arguments also give no recognition to the fact the company was sold, is under new management, and has different governance. On this record, we do not agree these are the same legal entities.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11                                                                         A-3854-18T2