**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3317-24

HONEYWELL INTERNATIONAL,
INC.,

      Plaintiff-Respondent/Cross-
      Appellant,

v.

SATEC, INC. and SATEC REAL
ESTATE HOLDING, LLC,

      Defendants-Appellants/Cross-
      Respondents.

_____

Argued January 28, 2026 – Decided March 10, 2026

Before Judges Gummer, Paganelli and Jacobs.

On appeal from the Superior Court of New Jersey, Chancery Division, Union County, Docket No. C-000014-25.

Patrick J. Spina argued the cause for appellants/cross-respondents.

Dennis M. Toft argued the cause for respondent/cross-appellant (Chiesa Shahinian & Giantomasi, PC,

attorneys; Dennis M. Toft, Michael S. Spinello and Gabrielle Grillo, on the briefs).

PER CURIAM

In 2009, the parties entered into a Settlement Agreement that requires plaintiff Honeywell International, Inc. (Honeywell) to remediate real property (the Property) owned by defendants SATEC, Inc. and SATEC Real Estate Holding, LLC (collectively, Satec). Satec appeals from a May 13, 2025 order that denied its motion to have certain claims transferred to arbitration in accordance with arbitration provisions in the Settlement Agreement. Honeywell cross-appeals from the same order regarding the denial of its right to immediate access and to remediate the Property, and the stay of the matter pending arbitration of the claim the court transferred to arbitration. We affirm, as modified by this opinion.

I.

The parties' dispute arises from their Settlement Agreement. Therefore, we recite its relevant terms for purposes of the appeal:

**RECITALS**

> A. On or about April 15, 2005, . . . Satec . . . filed a [c]omplaint . . . naming Honeywell, . . . in a dispute concerning alleged environmental contamination at [a] certain real property . . . . The Property is owned by Satec . . . .

2

A-3317-24

B.  Following discovery, as well as extensive and vigorous negotiations, the [p]arties have arrived at a settlement and wish to resolve the claims and controversies asserted in the [l]itigation and to resolve all other environmental matters regarding the Property, in accordance with this Settlement Agreement.

C.  While acknowledging that remediation of the Property may present difficulties and uncertainties, the purposes of this Settlement Agreement are to:  (i) resolve the [l]itigation between the [p]arties, including all claims which were, or could have been, presented in that matter; (ii) achieve a satisfactory environmental remediation that (a) permits Satec to finance or sell, at market price, without diminution in value for environmental contamination, the Property, at the earliest possible time, and (b) secure a No Further Action letter [(NFA)] from the New Jersey Department of Environmental Protection ("NJDEP") approving the clean-up of soil and groundwater (as may be required by the NJDEP) at the Property (the "NFA"); (iii) govern how Honeywell and Satec share the cost of remediation; (iv) allow the use of engineering and institutional controls during remediation of the Property, if approved by [the] NJDEP; (v) provide certain settlement payments; and (vi) provide Honeywell with certain indemnifications and other protections for claims including claims asserted, or which may be asserted, in the [l]itigation.

## SETTLEMENT TERMS

. . . .

## 2.0  FUNDING FURTHER INVESTIGATION AND REMEDIATION

3

**2.1 Cost Sharing of Approved Costs of Remediation Up To $2,000,000:** The initial $2,000,000 of Approved Costs of Remediation (as defined below), shall be allocated as follows: Honeywell shall contribute 75% and Satec shall contribute 25% (up to an aggregate cap of $500,000). For purposes of this [Settlement] Agreement "Approved Costs of Remediation" shall mean: (i) those expenses and costs for sampling, analysis, investigation, monitoring or cleanup, equipment costs, disposal fees, certain costs of operation and maintenance (as further described in Section 3 below), consultants' and engineers' fees, laboratory costs, contractors' and subcontractors' fees, incurred attorneys' fees, as well as expenses incurred in preparing and submitting remedial action plan (or plans) or remedial action report (or reports) to [the] NJDEP and in executing same to completion such that [the] NJDEP shall issue the NFA; (ii) the allocable costs of in-house personnel of Honeywell and Satec involved in management of remediation who may be billed at reasonable commercial rates according to a schedule of fees approved in advance by the [p]arties; (iii) out[-]of[-]pocket expenses incurred by Satec, after reasonable advanced notice to Honeywell, for operational and relocation expenses which are caused by remediation activities; and (iv) application and filing fees, and governmental agency oversight fees. Approved Costs of Remediation shall not include lost profits, lost enterprise opportunities or routine property maintenance including landscape maintenance, snow and ice removal, and resurfacing, repaving and striping of existing paved areas due to normal wear and tear.

**Section 2.2 Honeywell To Pay All Approved Costs of Remediation in Excess of $2,000,000:** If the total Approved Costs of Remediation exceed

4

$2,000,000, Honeywell shall pay for all costs in excess of $2,000,000.

. . . .

**Section 2.4  Disputes Concerning Approved Costs of Remediation:**  In the event of any dispute between the [p]arties over whether any costs or expenses constitute Approved Costs of Remediation, the [p]arties shall promptly confer in an effort to resolve their differences.  If the [p]arties are unable to resolve any dispute following a reasonable opportunity for joint consultation, then any and every question, dispute, claim or controversy concerning whether any costs or expenses constitute Approved Costs of Remediation shall be finally and non-appealably resolved by retired New Jersey Superior Court Judge Mark Epstein.  In the event that [Judge] Epstein is unable or unwilling to serve as an arbitrator the [p]arties shall confer and select a replacement. . . .

## 3.0  PERFORMANCE OF INVESTIGATION AND REMEDIATION

**3.1  Preparation and Submission of Remediation Plan:**  Honeywell shall prepare and submit, with the advice and consent of Satec, one or more proposals . . . to [the] NJDEP for the environmental remediation of the soils and ground water at the Property. . . . The [p]arties understand and agree that Honeywell may, in good faith, determine that the most cost-effective and expedient approach for remediation of the soil contamination is to undertake an "at risk" soil removal program . . . .  Use of the foregoing approach to soil remediation by Honeywell shall not negate the requirement to secure an NFA for soils.  Moreover, Honeywell represents and agrees that if the forgoing approach to soils remediation is utilized,

5

Honeywell shall . . . implement and perform . . . ground water remediation and obtain an NFA for ground water.

**3.2 Honeywell to Manage Remediation:** Honeywell shall engage and manage the necessary contractors, attorneys, consultants and other professionals to perform the remediation of the Property and obtain the NFA. Honeywell shall ensure that remediation proceeds in a timely and workman like manner. Until the Approved Costs of Remediation exceed $2,000,000[,] Honeywell shall obtain the consent of Satec concerning the manner in which the remediation shall be performed. Satec shall not unreasonably withold its consent, subject, nevertheless, to the [p]arties' rights to arbitrate disputes pursuant to the arbitration process set forth in Section 2.4. . . . Once the Approved Costs of Remediation exceed $2,000,000 (and Satec is no longer obligated to contribute), Honeywell shall have sole discretion (subject, nevertheless, to a reasonableness standard, the [p]arties' rights to arbitrate as hereinbefore set forth and Honeywell's express obligations and undertakings pursuant to this [Settlement] Agreement) regarding the manner in which it shall complete any remediation.

**3.3 Coordination:** Honeywell shall act, at all times, in a reasonable manner, and shall keep Satec informed of all remediation activities, provide advance notice of any meetings with [the] NJDEP or other governmental authorities relating to remediation of the Property, and afford Satec a[] reasonable opportunity to participate in such meetings. The [p]arties shall promptly provide one another with copies of all reports, submissions, correspondence or other documentation submitted to, or received from, [the] NJDEP or other governmental authorities relating to remediation of the Property.

A-3317-24

. . . .

    **3.8 Access:** Satec will permit Honeywell . . . reasonable access to the Property for investigation and remediation . . . .

On February 3, 2025, Honeywell filed an Order to Show Cause (OTSC) and verified complaint, pursuant to <u>Rule</u> 4:67-1(a), seeking to proceed summarily under N.J.S.A. 58:10B-16. Honeywell sought access to the Property to "install[] monitoring wells and conduct[] groundwater injections . . . and to perform such other work on the [P]roperty as is necessary or advisable as required by . . . []NJDEP[] regulations and [its] Licensed Site Remediation Professional ('LSRP')."

On March 5, 2025, in response to Honeywell's OTSC, Satec cross-moved to compel arbitration "of the claims and controversies . . . in accordance with the procedures set forth in th[e] . . . Settlement Agreement." Satec filed an answer, affirmative and separate defenses, and counterclaims in response to Honeywell's verified complaint. Satec denied: Honeywell had "engaged in 'good faith efforts' to gain access to the Property"; Honeywell had "acted 'reasonably' as required by the Settlement Agreement"; and "what [Honeywell] propose[d] as 'required work' for the Property [wa]s 'reasonable.'" Further, Satec alleged the "issues . . . are expressly reserved, under the

7

Settlement Agreement, for arbitration before the parties' designated arbitrator" Judge Epstein.

In its April 4, 2025 order, the court granted Honeywell's OTSC. The court denied Satec's motion to compel arbitration in part, "with respect to issues of access," and granted its motion in part, "with respect to those matters explicitly provided for in the Settlement Agreement." In an accompanying written statement of reasons, the court indicated it was "satisfied that access to the Property" was required, as provided in the Settlement Agreement. In addition, the court was "satisfied that N.J.S.A. 58:10B-16[] permit[ted] the [c]ourt to proceed in a summary fashion," under Rule 4:67-1(a), and "permit[ted] the issuance of an [o]rder granting access to the . . . Property." Further, the court cited to and relied on N.J.A.C. 7:26C-8.2, which provides regulations governing site access for the person responsible for conducting remediation.

In denying Satec's motion to compel the arbitration of access issues, the court found "[t]he [p]arties have a valid and binding Settlement Agreement" and "[t]here is nothing in the Settlement Agreement which provides that the [p]arties must arbitrate over issues of access to the Property."

However, the court found "any remaining issues pertaining to the Approved Costs of Remediation and methods by which [Honeywell] intends to

remediate, pursuant to the Settlement Agreement, should be mediated, and if unsuccessful, sent to binding arbitration in front of . . . Judge Epstein." Further, the court determined that "issues pertaining to Approved Costs of Remediation and whether the cost of remediation has truly exceeded $2,000,000[] as provided for in the Settlement Agreement are issues to be brought before . . . Judge Epstein, not the [c]ourt." In addition, the court stated "that [Satec] ha[d] raised issues with respect to the Approved Costs of Remediation, [Satec']s right to 'advice and consent' and to object to [Honeywell]'s proposed course of conduct, and [Honeywell]'s 'reasonableness' in proposing such remediation strategies." As to these issues, the court granted Satec's motion to compel arbitration "with respect to any other issues related to the Approved Costs of Remediation and methods by which [Honeywell] intends to remediate, . . . pursuant to the Settlement Agreement between the [p]arties."

Honeywell then moved for leave to amend its complaint to add counts for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory judgment to compel Satec to execute deed notices and permits for remediation. In response, Satec cross-moved in aid of litigant's rights, seeking to enforce the court's April 4, 2025 order.

On May 13, 2025, the court denied Honeywell's motion to amend its complaint and granted Satec's cross-motion in aid of litigant's rights with respect to those issues related to Approved Costs of Remediation but denied the cross-motion with respect to other matters "not explicitly provided for in the Settlement Agreement" or the court's April 4, 2025 order.

In its accompanying statement of reasons regarding the newly filed motions, the court found "that until the issues of Approved Costs of Remediation are resolved by and through binding arbitration before . . . Judge Epstein, this matter should be stayed." The court recited sections 2.1, 2.4, and 3.2 of the Settlement Agreement. The court found:

> A determination by Judge Epstein . . . on the Approved Costs of Remediation would help guide th[e c]ourt in resolving any issues not required to be arbitrated, with respect to the parties' obligations under the Settlement Agreement. Specifically, if the Approved Costs of Remediation have actually exceeded $2,000,000[] and performance of remediation is subject solely to [Honeywell]'s discretion, th[e c]ourt would be inclined to require [Satec] to execute the required documents for the NJDEP. If, however, Judge Epstein . . . determines that the Approved Costs of Remediation have not actually exceeded $2,000,000[] the course of action would take a different route as [Honeywell]'s proposed remediation would be subject to [Satec's] consent.

The court denied Honeywell's motion to amend its complaint without prejudice. The court found Honeywell's "proposed amendments regard access and [Satec's]

alleged failure to provide access." However, the court held, "[t]he issue of access has been resolved and thus amending the complaint at this stage would be futile as the issues were not raised prior to the issuance of the April 4, 2025 [o]rder."

As to Satec's cross-motion in aid of litigant's rights to enforce the April 4, 2025 order, the court noted "there appear[ed] to be confusion as to th[e] . . . April 4, 2025 [o]rder." The court clarified that the April order "did not provide that the parties [we]re to resolve **ALL** other issues not related to access [in arbitration], but rather those issues specifically provided for in the Settlement Agreement which, upon review of the Settlement Agreement applies only to Approved Costs of Remediation." The court granted Satec's "[c]ross-[m]otion in [a]id of [l]itigant['\]s[] [r]ights . . . with respect to issues relating to Approved Costs of Remediation" and denied the cross-motion "with respect to issues not explicitly required to be arbitrated before Judge Epstein . . . and not explicitly ordered by th[e c]ourt in its April 4, 2025 [o]rder." The court stayed "the matter . . . pending the resolution of the binding arbitration."

While Honeywell's motion to amend its complaint and Satec's cross-motion in aid of litigant's rights were pending, Honeywell moved in aid of litigant's rights, seeking to enforce the April 4, 2025 court order. Honeywell

11

argued the April order allowed it to "[i]nstall monitoring and injection wells, and borings, sample soil and groundwater and conduct groundwater injections" on the Property.

In its May 23, 2025 order, the court granted Honeywell's motion in aid of litigant's rights "insofar as [Satec] shall provide access to the Property pursuant to the [c]ourt's April 4, 2025 [o]rder." (Boldface omitted). However, in its statement of reasons, the court determined that "before [it] may enter any [o]rder requiring [Satec] to act in accordance with any remediation plans, or permit further remediation to be completed, those issues raised by [Satec] with respect to Approved Costs of Remediation need to be addressed in binding arbitration before Judge Epstein." The court restated its interpretation of the Settlement Agreement, as previously stated in the May 13, 2025 statement of reasons, that "if the Approved Costs of Remediation have actually exceeded $2,000,000[] and performance of remediation is subject solely to [Honeywell]'s discretion, th[e c]ourt would be inclined to require [Satec] to execute the required documents." However, if Judge Epstein "determines that the Approved Costs of Remediation have not actually exceeded $2,000,000[] the course of action would take a different route as [Honeywell]'s proposed remediation would be subject to [Satec's] consent." The court concluded that Honeywell "is entitled to access,

12

especially with respect to inspections."  However, the court noted it "did not [o]rder that [Satec] w[as] to sign any documents."

On appeal, Satec argues the trial court's April 4, 2025 order was "clear" and "correct."  Satec contends "[sections] 3.1 and 3.2, as to Satec's ability to 'not unreasonably withhold its consent' concerning 'the manner in which remediation shall be performed' and the 'reasonableness standard' to be applied to Honeywell's discretion as to the remediation protocols to be employed, are all issues specifically reserved for the designated [a]rbitrator, Judge Epstein." (Emphasis omitted).  It asserts the court, in its May 13, 2025 decision and order, "sua sponte overruled the April 4, 2025 [d]ecision and [o]rder, and adopted a confusing legal determination as to the arbitrable issues, inconsistent with the plain language of the Settlement Agreement."  Satec requests we vacate the May 13, 2025 order and reinstate the April 4, 2025 order.

In its cross-appeal, Honeywell contends:  (1) the Settlement "Agreement contains only a narrow and specific arbitration clause" regarding Approved Costs of Remediation in section 2.4 and we "need not and should not look to any other provisions of the" Settlement Agreement because:  (i) section 3.1 "is devoid of any language requiring or even suggesting that disputes regarding [Satec]'s right to advice and consent are subject to arbitration"; (ii) section 3.2

13

"does reference arbitration" but only "as hereinbefore set forth," which means "issues related to Approved Costs of Remediation under [s]ection 2.4" (emphasis omitted); and (iii) section 3.3 does not contain language with a "connection to arbitration"; (2) it has a right to access the Property and conduct remediation in accordance with N.J.S.A. 58:10B-16 and N.J.A.C. 7:26C-8.2 and the trial court's May 13, 2025 stay curtails the right affirmed in the court's April 4, 2025 order, and the position that access be permitted for inspection, but not for remediation, is "nonsensical"; and (3) N.J.S.A. 58:10B-16 prohibits joining non-germane issues—arbitration and breach of contract—in a summary action when a "remediating party . . . cannot come to an agreement with the property owner." Honeywell requests that we "reverse the trial court's stay on the litigation so that [it] may access the [Property] to" remediate "and affirm the trial court's decision that only issues related to Approved Costs of Remediation pursuant to [s]ection 2.4 of the [Settlement] Agreement are subject to arbitration."

II.

On appeal, our focus is on the appropriate forum—the courtroom or arbitration—for the parties' disputes. To answer that question, we turn to the parties' Settlement Agreement. "A settlement agreement between parties to a

lawsuit is a contract." Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016) (quoting Nolan v. Lee Ho, 120 N.J. 465, 472 (1990)). "The interpretation and construction of a contract is a matter of law for the trial court, subject to de novo review on appeal." Ibid.

"'It is well-settled that [c]ourts enforce contracts based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.'" Serico v. Rothberg, 234 N.J. 168, 178 (2018) (alteration in original) (quoting In re County of Atlantic, 230 N.J. 237, 254 (2017)) (internal quotation marks omitted). "A reviewing court must consider contractual language in the context of the circumstances at the time of drafting and . . . apply a rational meaning in keeping with the expressed general purpose. [I]f the contract into which the parties have entered is clear, then it must be enforced as written." Ibid. (alteration in the original) (quoting Atlantic, 230 N.J. at 254-55). "Contracts should be read 'as a whole in a fair and common sense manner.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009)). "A 'common-sense approach often begins with an examination of dictionary definitions.'" State v. Brown, 463 N.J. Super. 33, 49 (App. Div. 2020) (quoting Cypress Point Condo. Ass'n v. Adria Towers, LLC, 226 N.J. 403, 426 (2016)).

15

A contract "should not be interpreted to render one of its terms meaningless." Cumberland Cnty. Improvement Auth. v. GSP Recycling Co., Inc., 358 N.J. Super. 484, 497 (App. Div. 2003); see also Universal N. Am. Ins. Co. v. Bridgepointe Condo. Ass'n, 456 N.J. Super. 480, 494 (Law Div. 2018) ("A construction that will render any part of a [contract] inoperative, superfluous, or meaningless, is to be avoided.") (Alteration in original) (quoting State v. Reynolds, 124 N.J. 559, 564 (1991)); J.L. & Assocs. v. Heidler, 263 N.J. Super. 264, 271 (App. Div. 1993) ("Effect, if possible, will be given to all parts of the instrument and a construction which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable.") (Quoting Goldberg v. Com. Union Ins. Co. of N.Y., 78 N.J. Super. 183, 190 (App. Div. 1964)); Washington Constr. Co. v. Spinella, 8 N.J. 212, 217 (1951) ("Individual clauses and particular words must be considered in connection with the rest of the agreement, and all parts of the writing and every word of it will, if possible, be given effect . . . .").

The court's "task [i]s 'not to rewrite a contract for the parties better than or different from the one they wrote for themselves.'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 483 (2016) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)). A "'court has no [authority] "to rewrite the contract merely because

one might conclude that it might well have been functionally desirable to draft it differently."'" Impink ex rel. Baldi v. Reynes, 396 N.J. Super. 553, 560 (App. Div. 2007) (quoting Karl's Sales & Serv., Inc. v. Gimbel Bros., Inc., 249 N.J. Super. 487, 493 (App. Div. 1991)). Moreover, a court may not "remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other." Ibid. (quoting Gimbel Bros., 249 N.J. Super. at 493).

"The existence of a valid and enforceable arbitration agreement poses a question of law" requiring the Appellate Division's de novo review. Barr v. Bishop Rosen & Co., 442 N.J. Super. 599, 605 (App. Div. 2015) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). Under Rule 4:5-4, an assertion of the existence of an "arbitration and award" is considered an "affirmative defense." See also Cole v. Jersey City Med. Ctr., 425 N.J. Super. 48, 57 (App. Div. 2012) ("Under Rule 4:5-4, a responsive pleading must 'set forth specifically and separately' the affirmative defense of arbitration.").

"Although the public policy of this State is to favor arbitration as a means of settling disputes which otherwise would go to court, it is equally true that the duty to arbitrate, and the scope of the arbitration, are dependent solely on the parties' agreement." Cohen v. Allstate Ins. Co., 231 N.J. Super. 97, 100-01

(App. Div. 1989) (citation omitted).  "The parties may shape their arbitration in any form they choose and may include whatever provisions they wish to limit its scope."  Id. at 101.  "In determining whether a particular dispute is encompassed by an arbitration provision, as in construing any other contractual provision, a court's 'goal is to discover the intention of the parties[,]' which requires consideration of the 'contractual terms, the surrounding circumstances, and the purpose of the contract.'"  Angrisani v. Fin. Tech. Ventures, L.P., 402 N.J. Super. 138, 149 (App. Div. 2008) (alteration in original) (quoting Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993)).

Nevertheless, "[i]t is firmly established . . . that '[b]ecause of the favored status afforded to arbitration, "[a]n agreement to arbitrate should be read liberally in favor of arbitration."'"  Griffin v. Burlington Volkswagen, Inc., 411 N.J. Super. 515, 518 (App. Div. 2010) (all but first alteration in original) (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124, 132, (2001)).  Thus, "'courts operate under a "presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."'"  Ibid.

(quoting EPIX Holdings Corp. v. Marsh & McLennan Cos., Inc., 410 N.J. Super. 453, 471 (App. Div. 2009)).

"When reviewing a motion to compel arbitration, courts apply a two-pronged inquiry: (1) whether there is a valid and enforceable agreement to arbitrate disputes; and (2) whether the dispute falls within the scope of the agreement." Wollen v. Gulf Stream Restoration and Cleaning, LLC, 468 N.J. Super. 483, 497 (App. Div. 2021).

In addressing the parties' appeals, we consider: (1) the Settlement Agreement; (2) the importance of N.J.S.A. 58:10B-16 and N.J.A.C. 7:26C-8.2 to the parties' Settlement Agreement; and (3) whether the trial court erred in permitting Satec to raise non-germane issues of arbitration and breach of contract.

Settlement Agreement

In the Settlement Agreement, the parties recite their "wish to resolve the claims and controversies . . . and to resolve all other environmental matters regarding the Property." In addition, their stated goal is to "achieve a satisfactory environmental remediation that . . . permits Satec to finance or sell, at market price, without diminution in value for environmental contamination, the Property."

A-3317-24

The parties do not dispute the validity or enforceability of the Settlement Agreement, nor that it provides for arbitration. Further, they do not dispute that the "Approved Costs of Remediation" are subject to arbitration. However, the parties dispute whether the issues provided under section 3.2, concerning the manner in which Honeywell proposes to remediate the property are subject to arbitration. Specifically, depending on the amount of the "Approved Costs of Remediation," whether Satec's refusal to provide consent to that proposed manner is unreasonable or whether Honeywell's proposed manner is measured to a reasonableness standard are subject to arbitration.

Therefore, to resolve these disputes, we turn to the language of the Settlement Agreement. Section 2.4 provides that "any dispute . . . over . . . Approved Costs of Remediation," "shall be finally and non-appealably resolved by retired" Judge Epstein. The section is silent regarding whether other issues are subject to arbitration.

However, arbitration is mentioned again in section 3.2. In this section, arbitration is discussed in two settings, both tethered to whether the "Approved Costs of Remediation" exceed $2,000,000. In the first setting:

> Until the Approved Costs of Remediation exceed
> $2,000,000 Honeywell shall obtain the consent of Satec
> concerning the manner in which the remediation shall
> be performed. Satec shall not unreasonably withold its

A-3317-24

constent, <u>subject</u>, nevertheless, to the [p]arties' rights to <u>arbitrate</u> disputes pursuant to the <u>arbitration process</u> set forth in Section 2.4.

[(Emphasis added).]

In the second setting:

Once the Approved Costs of Remediation exceed $2,000,000 (and Satec is no longer obligated to contribute), Honeywell shall have sole discretion (<u>subject</u>, nevertheless, to a reasonableness standard, the [p]arties' rights to <u>arbitrate</u> as hereinbefore set forth and Honeywell's express obligations and undertakings pursuant to this [Settlement] Agreement) regarding the manner in which it shall complete any remediation.

[(Emphasis added).]

Our analysis starts with the surrounding circumstances and the purpose of the Settlement Agreement. As expressed by the parties, they sought to resolve their litigation, and other environmental matters, with the goal of allowing Satec to realize the "market price" for the Property "without dimunition in value for environmental contamination." Because the parties have different financial responsibilities, based on the amount of the "Approved Costs of Remediation," they agreed to arbitrate "any dispute" regarding that amount in section 2.4.

However, the parties also reference the arbitration provision in section 3.2 concerning Honeywell's management of the remediation. Thus, we consider why the arbitration language would appear in the section. It would be redundant

21

A-3317-24

and meaningless to interpret the language as a mere reminder to the parties of their obligation to arbitrate "any dispute" concerning the amount of the "Approved Costs of Remediation" as provided in section 2.4. Instead, a fair interpretation of section 3.2 compels a reading that requires the parties to arbitrate issues related to whether Satec was "unreasonably" withholding its consent to Honeywell's proposed "manner in which the remediation shall be performed" or whether Honeywell's sole discretion "regarding the manner in which it shall complete any remediation" satisfies a "reasonableness standard."

To interpret section 3.2, identically to section 2.4, would require us to ignore the explicit arbitration language contained in section 3.2. The language provides that "Satec shall not unreasonably withhold its consent, subject, nevertheless to the [p]arties' rights to arbitrate disputes pursuant to the arbitration process" and "Honeywell shall have sole discretion (subject, nevertheless, to a reasonabless standard, the [p]arties' rights to arbitrate as hereinbefore set forth and Honeywell's express obligations and undertakings pursuant to this [Settlement] Agreement) regarding the manner in which it shall complete remediation." The clear language of Section 3.2 requires arbitration regarding issues beyond "Approved Costs of Remediation."

22

To hone this point, we apply common sense to the language used by the parties. The parties use the phrase "arbitration process." A process means "the whole course of proceedings in a legal action." Merriam-Webster's Collegiate Dictionary 990 (11th ed. 2020). Thus, applying common sense, we determine the parties meant the arbitration process before Judge Epstein.

Moreover, the parties used the phrases "subject, nevertheless, to the [p]arties' rights to arbitrate" and "subject, nevertheless, to . . . the [p]arties's right to arbitrate." Subject means "to bring under control or dominion." Id. at 1243. Applying common sense reveals the parties' intent to bring issues of Satec's consent and Honeywell's reasonableness within the scope of arbitration.

Lastly, to interpret the arbitration provision to include Honeywell's remediation plans and Satec's input is rational considering Satec, as the owner of the Property—with the acknowledged goal to "to finance or sell, at market price, without diminution in value for environmental contamination"—would want input regarding Honeywell's remediation plans and the parties would want issues regarding the "Approved Cost Remediation" and their responsibilities deriving from the amount to be resolved in one forum.

Therefore, we conclude the Settlement Agreement requires the parties to arbitrate issues regarding: "Approved Cost Remediation," under section 2.4;

23

whether Satec unreasonably withholds consent if the costs have not exceeded $2,000,000 under section 3.2; and whether Honeywell's remediation plan passes a "reasonableness standard," if the costs have exceeded $2,000,000 under section 3.2.

N.J.S.A. 58:10B-16 and N.J.A.C. 7:26C-8.2

Honeywell relies on N.J.S.A. 58:10B-16 and N.J.A.C. 7:26C-8.2(a) to support its argument that it has a right to immediate access to the Property and to conduct remediation. It contends the stay impermissibly curtails that right, and access for the sole purpose of inspection, is "nonsensical." We disagree.

N.J.S.A. 58:10B-16(a)(1) provides:

> Any person who undertakes the remediation of suspected or actual contamination and who requires access to conduct such remediation on real or personal property that is not owned by that person, may enter upon the property to conduct the necessary remediation if there is an agreement, in writing, between the person conducting the remediation and the owner of the property authorizing the entry onto the property. If, after good faith efforts, the person undertaking the remediation and the property owner fail to reach an agreement concerning access to the property, the person undertaking the remediation shall seek an order from the Superior Court.
>
> [(Emphasis added).]

24

In addition, N.J.A.C. 7:26C-8.2(a) requires that a "person responsible for conducting remediation shall take all appropriate actions . . . to obtain the access to property, not owned by that person, which is necessary to implement the remediation." Moreover, N.J.A.C. 7:26C-8.2(d) provides that "[i]f the property owner does not grant access, the person responsible for conducting the remediation shall initiate and rigorously pursue an action in Superior Court."

Under N.J.S.A. 58:10B-16 and N.J.A.C. 7:26C-8.2, litigation becomes necessary when the property owner and the responsible party cannot reach an agreement and the owner denies access for remediation.

Honeywell's reliance on N.J.S.A. 58:10B-16 and N.J.A.C. 7:26C-8.2 is misplaced because the parties have a written agreement—the Settlement Agreement—that permits it access to the Property for purposes of remediation. Unfortunately, the parties dispute the terms of their Settlement Agreement, further delaying remediation efforts.

Nevertheless, there is nothing in the statute, the code, or in Honeywell's argument, that would allow Honeywell to avoid the terms of the Settlement Agreement and merely invoke the statute or code to proceed how it deems necessary. The parties must comport themselves in accordance with the Settlement Agreement.

Moreover, the court's stay pending abitration is appropriate. The Settlement Agreement provides for New Jersey law to apply. N.J.S.A. 2A:23B-7(g), requires that the "court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration. If a claim subject to the arbitration is severable, the court may limit the stay to that claim." At this stage, there is no claim severable from arbitration.

Non-Germane Issues

Honeywell contends the trial court erred in allowing Satec to plead the non-germane issues of arbitration and breach of contract. Honeywell relies on N.J.S.A. 58:10B-16(b), which provides:

> Unless the court otherwise orders for notice and for good cause shown, an action for an access order shall not be joined with non-germane issues against the owner of the property for which access is sought or other person who may be liable for the contamination. Non-germane issues shall include, but not be limited to, issues concerning contribution, treble damages, or other damages involving either the contamination or the remediation.

Nothing in the statutory language prohibits a party from asserting arbitration—a defense under Rule 4:5-4—or that the party responsible for conducting remediation has breached the agreement envisioned in N.J.S.A.

58:10B-16(a). Therefore, we conclude the court did not err in considering these issues.

Conclusion

We conclude the parties' Settlement Agreement requires arbitration under sections 2.4 and 3.2 as explained in this opinion. To the extent the trial court's May 13, 2025 order provides otherwise, it is modified consistent with this opinion. Further, we conclude neither N.J.S.A. 58:10B-16 nor N.J.A.C. 7:26C-8.2 allow Honeywell to avoid compliance with the terms of the Settlement Agreement. Lastly, we conclude there was no error in permitting Satec to raise a defense of arbitration or claim that Honeywell breached the Settlement Agreement.

Affirmed, as modified. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-3317-24