**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3537-24

GIAN-PAOLO CAMINITI,

    Plaintiff-Appellant,

v.

BOROUGH OF MANVILLE,

    Defendant-Respondent.

_____

        Submitted April 15, 2026 – Decided May 8, 2026

        Before Judges Paganelli and Jacobs.

        On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. DC-006274-24.

        Gian-Paolo Caminiti, self-represented appellant.

        Scholl & Whittlesey, LLC, attorneys for respondent (Franklin G. Whittlesey, of counsel and on the brief).

PER CURIAM

    Plaintiff Gian-Paolo Caminiti appeals from an April 10, 2025 order dismissing his complaint with prejudice after he completed presenting his

evidence during a bench trial. Because we conclude the trial court misapplied Rule 4:37-2, we reverse and remand.

In a September 2021 Memorandum of Employment, Caminiti and defendant Borough of Manville (Borough) agreed, among other terms, that he would "become the new, full time Borough Administrator" and his annual salary, effective January 1, 2023, would be $115,000. The memorandum also provided: "Caminiti will be entitled to . . . the same sick leave policies as enjoyed by all other . . . Borough [e]mployees. . . . Caminiti will adhere to the same policy of unused sick leave as other Borough [e]mployees."

In December 2023, Caminiti submitted a letter "of resignation in good standing from all duties and responsibilities [as] the Borough Administrator and Acting Clerk," effective January 5, 2024. In January 2024, Caminiti and the Borough signed a Separation Agreement and Mutual General Release Agreement (the Agreement). In relevant part, the Agreement provides "Caminiti is currently employed as the Borough Administrator/Acting Clerk." Further:

> a. . . . Caminiti agrees to submit his resignation to the Borough in writing, effective January 5, 2024. . . . Caminiti shall be paid as severance . . . [ninety] days[1] wages with all applicable withholding taxes deducted per statute N.J.S.A. 40:69A-149.9; and
>
> b. Concurrent with the execution of this . . . Agreement . . . in addition to the severance payment to

2

> . . . Caminiti, the Borough will pay . . . Caminiti his regular salary through the effective resignation date as recorded in the Borough's payroll management system. The Borough will also compensate . . . Caminiti for unused sick time with a cap of $15,000 minus the $7,841.83 in health insurance waivers received by . . . Caminiti. As and for all other claims of compensation by . . . Caminiti[,] the Borough will pay $5,000 to . . . Caminiti in full satisfaction thereof. The Borough agrees to submit payment of the total amount due, in full, within thirty (30) days of the last day of employment.

The Agreement included mutual releases of various claims between Caminiti and the Borough.

On February 2, 2024, the Borough advised Caminiti "that consistent with the . . . Agreement . . . , [it] will be sending [him] a payment of $25,908.17, less payroll deductions, for a net payment of $14,872.40." Caminiti acknowledged receipt of the payment but claimed he was entitled to additional monies under the Agreement.

In October 2024, Caminiti filed a complaint against the Borough. He alleged the Borough was in breach of multiple terms of the Agreement. He demanded $19,687.50 plus the fee for filing his complaint. The Borough filed an answer denying the allegations, asserting thirteen separate defenses, and claiming Caminiti had "been paid the amount agreed upon."

A-3537-24

The bench trial was held on April 10, 2025. Caminiti testified on his own behalf. He proffered the Memorandum of Employment, the letter of resignation,[1] the Agreement, and the Borough's check register reflecting the $14,872.40 payment. These items were entered into evidence without objection.

In addition, Caminiti proffered an unused sick-time accrual report, correspondence between him or his attorneys and the Borough's attorney, his "calculation of the money" the Borough owed him, and "a summary of a spreadsheet" prepared by the Borough's payroll management manager, Cameron Keng. The Borough's attorney objected to the admission of these additional documents, and the court reserved its decision on the objections, pending additional testimony.

In response to the trial court's questioning, Caminiti testified the Agreement was "very straight forward, very simple." He stated the Agreement has three components: ninety days' wages, "payment of unused sick time," and a "$5,000 blanket payment in satisfaction of any other claims going forward."

Caminiti testified the $14,872.40 payment "was the net amount on a gross payment of $25,908.17." He claimed the amount had been "erroneously

---

[1]  Purportedly attached to the letter was a Borough resolution accepting the resignation. The resolution is not part of the record on appeal.

calculated" by the Borough. Regarding his ninety-day wage claim, Caminiti asserted his base salary was $130,000. He calculated his hourly wage rate at $62.50 or $500 a day based on an eight-hour workday, or $2,500 per week based on a forty-hour work week. Under this calculation, Caminiti asserted he was owed $45,000—90 days multiplied by the $500 daily rate.

Alternatively, Caminiti calculated the ninety-day wage claim on a three-month basis. In this calculation, he divided his base salary, $130,000, by twelve months and determined under this scenario he was owed $32,500[2]— $10,833.33 per month multiplied by three months.

On cross-examination, Caminiti admitted "in December of 2022, . . . a resolution [was] passed appointing [him] as acting clerk in addition to Borough Administrator." Caminiti did not object to the resolution being admitted into evidence. During the Borough attorney's cross-examination of Caminiti, it became evident that Caminiti viewed the $130,000 salary as compensation for the administrator position and considered the clerk duties as additional responsibilities. The attorney attempted to have Caminiti agree that his salary

---

[2] Caminiti explained he would "opt for a lesser amount" because it would reduce his total claim "below the $20,000 threshold" and keep the matter in the Special Civil Part rather than in the Civil Part of Law Division. See R. 6:1-2(a)(1) (noting the relief sought in the Special Civil Part shall not exceed $20,000).

consisted of $115,000 for serving as administrator and an additional $15,000 for being the acting clerk.

The transcript reveals the following colloquy:

> [Borough Attorney:] Okay. And at that time, . . . your administrator salary was $115,000.
>
> [Caminiti:] No. My administrator salary was $130,000.
>
> [Borough Attorney:] That included the clerk's money, correct? I'm just --
>
> [Caminiti:] There was no separation of those two amounts.
>
> [Borough Attorney:] I'm separating it. For purposes of --
>
> [Caminiti:] Well, it's not in the resolution.
>
>      . . . .
>
> [Borough Attorney:] . . . [T]he resolution . . . states the Borough . . . authorizes a salary adjustment in the amount of $15,000 per annum to the Borough Administrator-Acting Clerk, to commence immediately.
>
> [Caminiti:] That's right.
>
> [Borough Attorney:] So, your salary was really a hybrid of two positions that you were working, correct?
>
> [Caminiti:] That's not what it says under the title of Resolution 2023-83. It says a resolution authorizing

6

the mayor and council to adjust the salary of Borough Administrator. Full stop.

[Borough Attorney:] Okay. But in the body of that paragraph, your salary is a hybrid of your administrator duties and your clerk duties, correct? I'm not arguing the total is not $130,000. I'm just trying, for purposes of discussion, that you received [$]115,000 as administrator and you received [$]15,000 more when you took on clerk's duties.

[The Court]: I think that he's --

. . . Caminiti: No, that's not accurate.

[The Court]: I think that he has testified to that. That's clear from the record. You can make any argument you want.

[Borough Attorney]: Okay, fine.

[The Court]: Let's not belabor that.

Regarding his claim for unused sick time, Caminiti testified he was owed a gross amount of $7,158. The Borough attorney cross-examined Caminiti on the unused sick time claim. During examination, the attorney sought to admit the Borough's Policies and Procedures Handbook, specifically, the cover page and an additional page. Although Caminiti did not object to the document's authenticity, he objected to its relevance concerning the Agreement. The court "overrule[d] the objection because . . . [the Borough's] counsel[] argu[ed] that this policy should be read in conjunction with the" Agreement. The court

7

admitted the document into evidence but stated it would "hear legal argument at the end of closing argument[s] as to why [it] should not consider it for that purpose." Caminiti agreed it is "the policy of the Borough . . . that unused sick time will be paid only upon retirement."

As to the $5,000 blanket payment, Caminiti testified it "seems to have been rolled into the partial payment that was made on" February 2, 2024. However, he stated "it shouldn't have been subject to withholding taxes and things like that."

At the conclusion of cross-examination, the trial court inquired whether Caminiti had "any other testimony that [he would] like to provide" and that would be helpful to the court. Caminiti stated "[i]t might be helpful because there seems to be . . . some well-intentioned misunderstanding about how the calculations were made."

Caminiti asserted his "salary at the time of the resignation was $130,000 a year." The trial court interjected, "[n]obody's disputing the fact that your annual salary was $130,000." However, the court explained to Caminiti "the problem is that you have to be able to establish . . . the amount that you were owed and the amount you were underpaid." The court found Caminiti had no "paperwork" or "documentation" to support that he was paid $500 a day. The

court noted the Borough's attorney had said "it should be [$]356.16."[3] Caminiti asserted the "resolution showing that [his] pay went to [$]130,000" and "the [M]emorandum of [E]mployment describing [his] regular work hours," formed "the basis for the calculation of $62.50 an hour or $500 a day."

After Caminiti stated he had no further information and had no other witnesses, the Borough's attorney moved to dismiss the case because there were "insufficient proofs submitted to allow the [c]ourt to come to a conclusion[, even] assuming everything . . . Caminiti has testified to, all [of] the evidence he submitted, [he] d[id no]t know how the [c]ourt c[ould] come to a resolution of what [Caminiti's] damage number [wa]s with any form of accuracy to allow this proceeding to move forward."

Caminiti disagreed that the matter should be dismissed. He asserted there was "more than adequate proofs" and he could "provide additional documentation as needed." Caminiti asserted there was a "question of the unused sick time" and there was "no reference in the . . . [A]greement to the . . . employee policy manual." He contended the unused sick time was "a negotiated term" and "there's no implicit understanding on that."

---

[3] During cross-examination, the Borough attorney suggested taking $130,000 and dividing it by 365 days to arrive at the daily rate of $356.16.

The trial court stated, "[t]he problem is . . . today's trial day," and Caminiti

> failed to present sufficient evidence in this record of the fact that [he was] owed $500 per day for . . . [ninety] days[1] wages.
>
> I don't have a clear picture, or I don't have evidence in the record to support [Caminiti's] contention that [he] w[as] owed a specific amount for [his ninety] days[1] wages and that the [Borough] failed to pay [him] for those wages.
>
> Similarly, I do not have sufficient evidence in this record to demonstrate that the [Borough] underpaid [Caminiti] for the unused sick time. And there's just no evidence in the record of that. [Caminiti] simply testified that [he] entered into the . . . [A]greement. [Caminiti] believe[d] that [his] salary per day is $500 . . . based on [his] calculation of making $130,000 dividing that by the time frame that [he] did and coming up with the $62 an hour. I don't have any paperwork or documentation to support that.
>
> . . . .
>
> . . . I have been asking countless questions to try to understand the evidence that's been presented to me, to try to understand what [Caminiti's] position is, how [he] arrived at the specific amounts. But all I have to go on that [his] salary [wa]s [ninety] days – [wa]s $500 a day, [wa]s [his] own testimony.
>
> And I understand that [Caminiti] ha[s] contracts here indicating that [he] were paid [a] $115,000 base, $15,000 added for [his] clerk responsibilities for a total of [$]130,[000,] but it is disputed between the parties. I don't find clear evidence in the record to demonstrate that the rate at which [Caminiti] should have been paid

10

per day is $500 per day. There's simply no documentation in the record that demonstrates that satisfactorily to me such that I would find that [Caminiti] has met [his] burden that [he is] entitled to any relief here today.

Similarly, I don't even have a breakdown of what is owed for wages versus what is owed for [Caminiti's] sick time. There was never testimony by [Caminiti] as to what amount was owed for sick time versus what amount was paid out for it. All I have is the testimony that there was a gross amount that was received and alleged testimony of what the gross amount owed is, but I don't have documentation to back that up.

So, for all of those reasons, I am finding that there is no cause of action here, and I'm dismissing [the] complaint.

On appeal, Caminiti contends: the trial court "erred by failing to acknowledge damages proven at trial, did not fully examine evidence and witness testimony, [and] improperly dismissed the complaint." (Capitalization modified).

Rule 4:37-2 provides:

(b) At Trial-Generally. After having completed the presentation of the evidence on all matters other than the matter of damages (if that is an issue), the plaintiff shall so announce to the court, and thereupon the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal of the action or of any claim on the ground that upon the facts and upon the law the plaintiff has shown no right to relief. Whether the action is tried

11

with or without a jury, such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor.

. . . .

(d) Dismissal with Prejudice; Exceptions. Unless the order of dismissal otherwise specifies, a dismissal under R[ule] 4:37-2(b) . . . operates as an adjudication on the merits.

[(Boldface omitted).]

The standards of Rule 4:37-2(b) require the court to deny such motions based on the rule if reasonable minds could differ after "accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately deduced therefrom." Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016) (quoting Verdicchio v. Ricca, 179 N.J. 1, 30 (2004)) (internal quotation marks omitted). "The motion should only 'be granted where no rational juror could conclude that the plaintiff marshaled sufficient evidence to satisfy each prima facie element of a cause of action.'" Ibid. (quoting Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 197 (2008)).

"[T]he judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party

A-3537-24

opposing the motion." Prioleau v. Ky. Fried Chicken, Inc., 434 N.J. Super. 558, 560 (App. Div. 2014), aff'd, 223 N.J. 245 (2015) (alteration in original) (quoting Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969)). "Ordinarily, the dismissal motion should be denied if the plaintiff's case rests upon the credibility of a witness." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:37-2 (2026) (citing Ferdinand v. Agric. Ins. Co. of Watertown, N.Y., 22 N.J. 482, 484 (1956)).

"By its very terms, Rule 4:37-2(b) limits the trial court to the evidence in, and inferences that may be drawn from, the trial record." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 39 (2014). Thus, logically, the Rule requires the trial court to make decisions regarding objections to the admissibility of evidence before ruling on the motion. See Townsend v. Pierre, 221 N.J. 36, 53 (2015) (holding, in the summary judgment setting, when "a trial court is 'confronted with an evidence determination . . . ,' it 'squarely must address the evidence decision first.'" (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 384-85 (2010))).

"[D]eference is given 'to the trial court's factual findings . . . when supported by adequate, substantial and credible evidence.'" Zaman v. Felton, 219 N.J. 199, 215 (2014) (omission in original) (quoting Toll Bros., Inc. v. Twp.

of W. Windsor, 173 N.J. 502, 549 (2002)) (internal quotation marks omitted). On the contrary, "the trial court's conclusions of law are reviewed de novo." Id. at 216. The "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Ibid. (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). We review de novo a trial court's decision on these motions, applying the same standard as the trial court. Smith, 225 N.J. at 397.

"The interpretation and construction of a contract is a matter of law for the trial court, subject to de novo review on appeal." Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016). "It is well-settled that [c]ourts enforce contracts based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract." Serico v. Rothberg, 234 N.J. 168, 178 (2018) (alteration in original) (quoting In re County of Atlantic, 230 N.J. 237, 254 (2017)) (internal quotation marks omitted). "A reviewing court must consider contractual language in the context of the circumstances at the time of drafting and . . . apply a rational meaning in keeping with the expressed general purpose. [I]f the contract into which the parties have entered is clear, then it must be enforced as written." Ibid. (alteration and omission in original) (quoting In re

14

County of Atlantic, 230 N.J. at 254-55). "Contracts should be read 'as a whole in a fair and common sense manner.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009)).

The "court's task [i]s 'not to rewrite a contract for the parties better than or different from the one they wrote for themselves.'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 483 (2016) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)). A "'court has no [authority] "to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently."'" Impink ex rel. Baldi v. Reynes, 396 N.J. Super. 553, 560 (App. Div. 2007) (quoting Karl's Sales & Serv., Inc. v. Gimbel Bros., Inc., 249 N.J. Super. 487, 493 (App. Div. 1991)). Moreover, a court may not alter a contract "for the benefit of one party and to the detriment of the other." Ibid. (quoting Karl's Sales & Serv., Inc., 249 N.J. Super. at 493).

"We have historically refused to enforce contracts that violate public policy . . . ." Whalen v. Schoor, DePalma & Canger Grp., Inc., 305 N.J. Super. 501, 506 (App. Div. 1997). Further, "[i]n a variety of settings, we have declined to enforce contracts that violated statutes . . . ." Ibid.

15

A party claiming breach of contract has

> the burden to prove four elements: first, that "[t]he parties entered into a contract containing certain terms"; second, that "plaintiff[s] did what the contract required [them] to do"; third, that "defendant[s] did not do what the contract required [them] to do[,]" defined as a "breach of the contract"; and fourth, that "defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff[s]."
>
> [Globe Motor Co., 225 N.J. at 482 (alterations in original) (quoting Model Jury Charges (Civil), 4.10A, "The Contract Claim—Generally" (approved May 1998)).]

The elements "must be proven by a preponderance of the evidence." Ibid. "The term 'preponderance of the evidence' means that amount of evidence that causes you to conclude that the allegation is probably true. To prove an allegation by the preponderance of the evidence, a party must convince you that the allegation is more likely true than not true." Model Jury Charges (Civil), 1.12H, "Preponderance of the Evidence (short version)" (approved Nov. 1998).

Applying this well-established law, we conclude the trial court misstepped in granting the Borough's motion to dismiss. First, the court left unresolved a number of evidentiary objections before addressing the motion. The court did not determine the admissibility of Caminiti's proffered unused sick time accruals report, correspondence between him or his attorney's and the Borough's

16

attorney, his "calculation of the money" the Borough owed him, and Keng's "summary of a spreadsheet." Moreover, although the court admitted a page or two from the Borough's policy manual, it reserved the issue of whether or how it should consider the document for further discussion pending closing arguments, which never occurred. Under these circumstances, it was incumbent upon the court to resolve the evidentiary issues before addressing the Borough's motion to dismiss.

Second, although the court's pursuit of clearer documentation is understandable, the court should not have been "concerned with the worth, nature, or extent (beyond a scintilla) of the evidence, but only with its existence." Prioleau, 434 N.J. Super. at 560 (quoting Dolson, 55 N.J. at 5-6). Thus, on remand, once the court decides the outstanding evidential issues, it must "accept[] as true all the evidence which supports [Caminiti's] position" and provide him with all reasonable inferences to determine if there is a scintilla of evidence to support his claims. Smith, 225 N.J. at 397 (quoting Verdicchio, 179 N.J. at 30).

Third, the trial court omitted an analysis of Caminiti's claim regarding the $5,000 payment. Although Caminiti acknowledged the amount was included within the payment from the Borough, he asserted it was wrongly "subject to

withholding taxes and things like that."  On remand, the court must analyze these issues while considering the admitted evidence.

Fourth, regarding unused sick time, the court stated there was no evidence to support that Caminiti was underpaid.  The import of the court's statement is that if appropriately supported, Caminiti could have been entitled to relief.  Again, on remand, the court must analyze Caminiti's contention considering the admitted evidence.

In its brief, the Borough argues Caminiti "was never entitled to sick time as the Borough['s] policy did not permit such a payout."  The trial court failed to address the importance the policy had, if any, on the parties' Agreement.  The court must address this issue in considering the "interpretation and construction" of the Agreement, Cumberland Farms, Inc., 447 N.J. Super. at 438, and when considering the purpose and circumstance surrounding the Agreement, Serico, 234 N.J. at 178.

Moreover, in its brief, the Borough argues a payment for unused sick time "would also violate the holding in Carelli v. Borough of Caldwell, 474 N.J. Super. 49, 52-55 (App. Div. 2022)."  Our review of the transcript fails to reveal this argument was made before the trial court.  We decline to consider it here because "issues not raised [with the trial court] will ordinarily not be considered

on appeal unless they are jurisdictional in nature or substantially implicate the public interest." N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 339 (2010). Neither of these considerations are present on appeal.

Reversed and remanded for proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division